Kelsey D. KIPF and Kathy E. Kipf, Husband and Wife, Plaintiffs,

v.

UNITED STATES of America; Farmers Home Administration; Robert Bergland, in his capacity as Secretary of the United States Department of Agriculture; Gordon Cavanaugh, in his capacity as Administrator of the Farmers Home Administration, United States Department of Agriculture; Wallace B. Edland, in his capacity as State Director for Montana of the Farmers Home Administration, United States Department of Agriculture; Billie J. Burns, in his capacity as District Director of the Farmers Home Administration, United States Department of Agriculture; Evert J. Lovec, individually and in his capacity as County Supervisor for the Farmers Home Administration in Custer County, Montana, United States Department of Agriculture; and Mary Lou Falconer, individually and in her capacity as Assistant County Supervisor for the Farmers Home Administration in Custer County, Montana, United States Department of Agriculture, Defendants.

No. CV–78–68–BLG.

United States District Court, D. Montana, Billings Division.

Oct. 8, 1980.

William J. Miele, Montana Legal Services Ass'n, Miles City, Mont., Robert L. LaRoche, Mont. Legal Serv. Ass'n, Billings, Mont., for plaintiffs.

Lorraine D. Gallinger, Asst. U. S. Atty., Dist. of Mont., Billings, Mont., for defendants.

## OPINION AND ORDER

BATTIN, Chief Judge.

The principal issue raised by this case is whether a plaintiff who received a Farmers Home Administration loan from the Department of Agriculture has a cause of action against the federal government and Department officials (a) for breach of contract or (b) for negligence. Because the cause of action for negligence is barred by *United States v. Neustadt*, 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961), and the Federal Tort Claims Act, we conclude that the defendant's motion to dismiss as to the negligence claim must be granted. Because of the uncertain state of the law as to the contract claim, defendant's motion to dismiss as to this count should be denied.

Sometime prior to September 9, 1975, plaintiffs Kelsey and Kathie Kipf notified the local Farmers Home Administration (FmHA) office in Miles City, Montana, that they wished to purchase a home at 2209 Leighton Boulevard in Miles City. Kelsey Kipf is blind and neither Kelsey nor his wife had ever purchased a home before. On September 9, 1975, plaintiffs signed an option to purchase and on September 12, 1975, they submitted a completed loan form to the local FmHA office. On October 7, 1975, Mary Lou Falconer, a FmHA assistant county supervisor, conducted an inspection of the house to determine whether it was acceptable for FmHA financing. Ms. Falconer found the house's foundation, roof, windows, floor, floor coverings, exterior walls, and wiring to be "good." Soon afterwards, the house was approved for FmHA financing. On November 12, 1975, plaintiffs received a rural housing loan of $19,-850.00 to purchase the house. Over the course of the next year, the Kipfs discovered numerous defects in the house, including cracked concrete floors, buckling foundation, leaking roof, water seeping down the walls during rainstorms, bowed walls, sagging ceilings, and exposed electrical wires, outlets and light switches in the garage.

On October 7, 1977, plaintiffs filed a claim for damages with the FmHA and on December 22, 1977, this claim was denied. On April 14, 1978, plaintiffs filed suit in this Court, alleging breach of contract and negligence. On September 14, 1978, defendants United States of America, Farmers Home Administration, Robert Bergland, Gordon Cavanaugh, Wallace B. Edland, Billie J. Burns, Evert J. Lovec, and Mary Lou Falconer filed motions to dismiss. These motions are presently before the Court.

## TORT THEORY

In the initial count of their complaint, plaintiffs allege that all of the defendants were negligent in not warning them of the defects which appeared in their home after Ms. Falconer inspected it. Because of the Federal Tort Claims Act and the case of *United States v. Neustadt*, 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961), this cause of action must be dismissed.

First of all, it seems that one of the initial bars to a suit against the federal

government cannot be overcome here. The principle of federal sovereign immunity bars all suits against the federal government unless the sovereign has consented. *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). The basic statute embodying the consent of the federal government as to tort suits is the Federal Tort Claims Act (28 U.S.C. § 2671, *et seq.* (1977)). Section 2680(h) explicitly states that *no* consent is given for "[a]ny claim arising out of . . . misrepresentation." Because the thrust of plaintiffs' claim is the misrepresentation of Ms. Falconer as to the condition of the house bought by the Kipfs, the claim is barred by the Federal Tort Claims Act.

Plaintiffs nonetheless insist that the gist of this action is not misrepresentation because it is not labelled as such in their complaint. A decision of the United States Supreme Court is conclusive on this point. In *United States v. Neustadt*, 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961), plaintiffs tried to hold the Federal Housing Administration liable for negligent inspection, precisely the allegations made by the plaintiffs here. In *Neustadt*, the Court held that "misrepresentation" includes "negligent misrepresentation." *Id.* at 702, 81 S.Ct. at 1298.[1] *Neustadt* also states that misrepresentation has been "associated with common law deceit and confined very largely to the invasion of interests of a financial or commercial character, in the course of business dealings." *Neustadt*, 366 U.S. at 711 n. 26, 81 S.Ct. at 1302 n. 26, quoting Prosser, Handbook of the Law of Torts 702–03 (1941 ed.). In the case at bar, the Department of Agriculture officials are alleged to have failed to inspect and warn the plaintiffs of defects which the plaintiffs should have been aware of before they borrowed money to purchase their defective home. Complaint, ¶¶ 32 and 33. Thus, in light of the business nature of the transaction involved in this case, there is little doubt that the tort alleged is that of negligent misrepresentation and must be dismissed under the Federal Tort Claims Act.

## CONTRACT THEORY

Plaintiffs also allege that the defendants breached an express contractual duty to inspect. Their reasoning goes somewhat like this. The note signed by the plaintiffs expressly stated that all regulations of the Department of Agriculture were incorporated into the note. Those regulations created a duty on the part of the government to inspect plaintiffs' home to insure that the house was "decent, safe, and sanitary." 7 C.F.R. § 1822.2 (1975). Unconventional though such claims may appear, they do not justify dismissal under Fed.R.Civ.P. 12(b) and 41 for failure to state a claim.

█ First of all, it seems clear that a federal district court has jurisdiction of a contractual claim such as this against the United States government. Under the Tucker Act, 28 U.S.C. § 1346(a)(2) (1977), a federal district court has jurisdiction for all contractual claims against the government:

> [District court has] original jurisdiction . . . . of . . . (2) Any other civil action . . . against the United States, not exceeding $10,000 in amount, founded . . . upon any *express or implied contract* with the United States . . . .

This provision acts as a waiver of sovereign immunity, *Tempel v. United States*, 248 U.S. 121, 129, 39 S.Ct. 56, 58, 63 L.Ed. 162 (1918),[2] and hence allows the United States to be sued on a contractual claim.

1. While it is true that under *Neustadt* a failure to supervise the construction of a house would not be misrepresentation, *Parker v. Knebel*, No. EC 76–210–K, Order at 7 n. 2 (N.D.Miss.1978), the negligent inspection alleged here seems more akin to misrepresentation.

2. As Justice Blackmun has pointed out, there is a distinction between a waiver of sovereign immunity and creation of a substantive right. *United States v. Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976). Here the substantive right arises only under the Department of Agriculture regulations and not under the Tucker Act. In finding that the Tucker Act is a waiver of sovereign immunity, we follow the reasoning of the Court of Claims in *National Bank of Newark v. United States*, 357 F.2d 704, 706 (Ct.Cl.1966), and reject the holding of the D.C. Circuit Court of Appeals in *Jackson v. Lynn*, 506 F.2d 233, 237 (D.C. Cir. 1974).

■ Plaintiffs allege that the contractual duty here arises out of the note itself. The note executed by plaintiffs expressly states, "This note shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions hereof." Now we reach the core of plaintiffs' argument where they recite a litany of Department of Agriculture regulations which allegedly create a duty to inspect and warn on the part of the government.

The Department of Agriculture regulations make clear that "[t]he basic objective of the FmHA in making section 502 loans is to assist farm owners and other persons who live in rural areas to obtain decent, safe, and sanitary dwellings and related facilities." 7 C.F.R. § 1822.2 (1975). *See also* 7 C.F.R. § 1802.2(b) (1975). The secondary objectives of these regulations regarding supervision of the Agriculture officials are twofold. The supervision of loans by government officials "will be provided borrowers to the extent necessary to achieve the objectives of the loan and to protect the interests of the Government . . . ." 7 C.F.R. § 1822.7(a) (1975). Thus, while one of the loan objectives appears to be protection of governmental property interests, another objective, apparently of equal weight, is "to achieve the objectives of the loan," one of which is to provide rural residents with "decent, safe, and sanitary dwellings." Nowhere in the regulations is there an explicit requirement that the County Supervisor inspect the proposed home; the only supervisory requirements relate to the financial details of the loan itself. *See* 7 C.F.R. 1802.3 (1975). There is, however, the following requirement:

> Any buildings purchased with [Rural Housing] funds must be structurally sound, functionally adequate, and either in good repair or placed in that condition with loan funds. Newly constructed dwellings must comply with the policies stated in paragraph (b)(1) of this section. Good judgment must be used in applying these policies to existing dwellings.

7 C.F.R. § 1822.7(b)(2) (1975). Plaintiffs urge that these regulations describing the loan objectives, when read together, create a duty on the part of the government to adequately inspect the proposed housing. The Department of Agriculture insists, on the other hand, that the only purpose of the inspection is to protect the government's security interest.

The Department's argument is unpersuasive for several reasons. First of all, Mr. Kipf's status as a blind, inexperienced borrower further lends support to the argument that the government in its regulations has assumed a contractual duty toward plaintiffs. One regulation specifically provides, "Some borrower families need supervisory assistance in evaluating and selecting . . . buildings . . . [and] [s]uch supervisory assistance is especially important with families receiving initial FmHA loans who are relatively inexperienced." 7 C.F.R. § 1802.-65 (1975). Thus, it seems apparent that the Department of Agriculture officials supervising the financing of FmHA–approved homes are responsible for inspecting the homes to insure that the borrowers receive the "decent, safe, and sanitary" homes which they need.

Another reason that the inspection implicitly required by the regulations does not appear to be solely to protect the government's security interest is that the regulations seem to assign this function to a separate appraisal. The regulations provide:

> When a mortgage will be taken on a nonfarm tract . . . to secure a loan of $5000.00 or more, an appraisal of the security property will be made . . . .

7 C.F.R. § 1822.9(c)(1) (1975). The regulation further provides:

> An appraisal of the real estate or leasehold interest is not required unless the County Supervisor or loan approval official is uncertain as to the adequacy of the security . . . .

7 C.F.R. § 1822.9(c)(3) (1975). Unlike the statutes considered in *Neustadt*, this appraisal and not the inspection itself seems to be the procedure by which the government's property interest is to be protected. *Neustadt*, 366 U.S. at 708, 81 S.Ct. at 1301.

Thus it seems plausible that the government, through its regulations, has, indeed, assumed a duty of inspection toward borrowers purchasing homes with FmHA funds.

Another consideration here is the Congressional intent regarding the scope of the delegation statute authorizing the regulations in question here. Under 42 U.S.C. § 1485(a) (1976), the Secretary of Agriculture is authorized to "make loans to ... families of low or moderate income or other persons and families of low income in rural areas." Under 42 U.S.C. § 1480(i) (1976), the Secretary is further authorized to "make such rules and regulations as he deems necessary to carry out the purposes of this subchapter." Finally, under 42 U.S.C. § 1476(a) (1976), the Secretary of Agriculture is authorized

> to furnish, through such agencies as he may determine, to any person, including a person eligible for financial assistance under this subchapter, without charge or at such charges as the Secretary may determine, technical services such as building plans, specifications, construction supervision and *inspection,* and advice and information regarding farm dwellings and other buildings. [Emphasis added.]

These statutes, plaintiffs argue, indicate a Congressional intent that the government be held liable for any violations of this duty to inspect.[3]

■ On its face, however, the delegation statute does not purport to create a cause of action in a borrower relying upon an official's duty to inspect. The general rule in situations such as this is that a statute which does not purport to establish a civil liability is not subject to a construction establishing a civil liability. *Kirk v. United*

*States,* 270 F.2d 110, 117 (9th Cir. 1959). *See also Conway v. Monidah Trust,* 47 Mont. 269, 279, 132 P. 26, 28 (1913); 73 Am.Jur.2d, "Statutes" § 432 (1974).[4] But the claim here is based upon a "contract with the United States" under 28 U.S.C. § 1346(a)(2) (1977) of the Tucker Act and is not based upon a separate "Act of Congress" creating a civil liability. Interestingly enough, jurisdiction for most of the other cases involving a claim upon either an FHA or FmHA loan have been founded upon an "Act of Congress." *See Parker v. Knebel,* No. EC 76–210–K, Order at 1 (N.D. Miss.1978); *Myers v. Bergland,* Unpublished Opinion No. 78–1058 (4th Cir. 1979); *United States v. Cannon,* No. 76–1834, Order at 4 (D.S.C.1977). Because the present cause of action is based upon a contract under an alternative provision in the Tucker Act, the Congressional intent behind the statute delegating authority to the Secretary of Agriculture is irrelevant. So long as the Tucker Act itself is considered a waiver of sovereign immunity, a plaintiff can recover whenever a contractual duty by the United States government can be shown. Indeed, the plaintiffs' and the defendant's intentions in making the contract in question is a factual issue which plaintiffs should have an opportunity to prove at trial.

■ There is a further, more compelling reason why the government owes plaintiffs a duty of ordinary care in inspection. If the government undertakes to provide services otherwise not required of it, these services must be performed with the exercise of due care; the government will be liable for injuries shown to have been proximately caused by lack of such care. *Delta Airlines, Inc. v. United States,* 561

---

**3.** Since we base our decision here upon the contractual duty created by the Department of Agriculture regulations, the validity of these regulations is of no concern to us. Thus, we need not consider the issue of whether these regulations are in excess of the agency's authority under the delegation statute.

**4.** In *Conway,* the Montana court acknowledged a widely recognized distinction between stat-

utes which impose a duty to the public "considered as an entity," where no private right of action exists, and those which impose a duty to a particular class, where a right of action exists in all members of the class. *Conway v. Monidah Trust,* 47 Mont. at 279, 132 P. at 28. Since the statute in question here is expressly directed at a particular class of low--income individuals, the distinction need not concern us.

F.2d 381, 389 (1st Cir. 1977).[5] As Judge Pope points out in his concurring opinion in *Kirk v. United States*, 270 F.2d at 119, where the government voluntarily assumes a duty to help someone it immediately becomes obligated to perform that duty with reasonable care. *Citing Indian Towing Co. v. United States*, 350 U.S. 61, 69, 76 S.Ct. 122, 126, 100 L.Ed. 48 (1955). In the case before us, the government has, according to the plaintiffs' complaint, led the plaintiffs to believe that the government was inspecting the house's condition in order to insure that the plaintiffs were receiving the "decent, safe, and sanitary" home they desired. Whether plaintiffs actually relied upon this representation or whether such a reliance was reasonable are factual issues which can only be determined at trial.

There arises, then, a factual issue as to whether there was such an assumption of a duty to inspect and warn by the government. There are, of course, two methods by which defendants may have led plaintiffs to rely on a duty to inspect. The first is through its regulations as discussed above. The second is through Ms. Falconer's representations. If the plaintiffs can establish that, either through its regulations or through the actions of Ms. Falconer, the FmHA undertook a duty to warn plaintiffs of defects in the house plaintiffs were planning to purchase, then clearly plaintiffs should recover. This reason alone justifies denying defendant's motion to dismiss, for a complaint can only be dismissed for failure to state a claim if "in no event would the pleader be able to prove an actionable claim." *Parr v. Great Lakes Express Company*, 484 F.2d 767, 770 (7th Cir. 1973). *Accord, Scheur v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *United States v. Howell*, 318 F.2d 162, 166 (9th Cir. 1963).

It is true that of the three federal decisions considering a claim such as this one, sounding in either tort or contract, only one court has upheld the claim. In *Parker v. Knebel*, No. EC 76–210–K (N.D.Miss.1978), the court held that the government had no contractual duty to supervise the construction of an FmHA–approved home because the government was not a party to the construction contract but that *Neustadt* did not bar a negligence claim because an allegation of negligent supervision of construction cannot be characterized as "misrepresentation" within the meaning of 28 U.S.C. § 2680(h) (1977) of the Federal Tort Claims Act. *Id.* at 3, 5 n.1. As to the duty to inspect, the court stated,

> The record reveals no set of facts to establish that FmHA did anything but remain passive regarding the construction contract except to the limited extent of making one inspection report showing the house to be 80% complete and itemizing no conditions at variance with the approved plans and specifications.

*Id.* at 4. But as we have seen, the Department of Agriculture's regulations dealing with inspection replaced this passivity with an active duty to inspect the home which the borrower is buying. Instead of merely supervising performance of a construction contract to which it is not a party, the government has actually undertaken a duty to inspect as part of the loan contract itself.

Two other cases have held that a claim such as that raised by the plaintiffs here should be dismissed as insubstantial. In *United States v. Cannon*, No. 76–1834 (D.S. C.1977), the FmHA was held not to owe borrowers a duty "beyond a loan–making function." *Id.*, Order at 3. Interpreting the same regulations which are at issue here, the court concluded that the regulations could not bar the FmHA's action to foreclose on their mortgage. Similarly, in *Ramsey v. FmHA*, 443 F.Supp. 760 (E.D.Mo.

---

**5.** Several courts have held that when the government enters into a contract it "divests itself of its sovereign character" and may be sued like an ordinary individual. *See, e. g., United States v. Georgia Pacific Company*, 421 F.2d 92, 101 (9th Cir. 1970). Furthermore, where the government undertakes to provide such services, the government is liable despite the Federal Tort Claims Act. *Ingham v. Eastern Airlines, Inc.*, 373 F.2d 227, 236 (2d Cir. 1967).

1978), the court held that these regulations "were not intended to create a right of action against the FmHA." *Id.* at 762. In *Ramsey*, as in *Parker*, the plaintiff insisted that the FmHA was derelict in not properly overseeing the construction of his home. The court based at least part of its holding on a regulation explicitly denying that the FmHA was a party to any construction contract between the borrower and the contractor. 7 C.F.R. § 1804.4(6)(i)(a) (1975). Obviously, because the case at bar involves no construction, this regulation cannot negate FmHA's duty to inspect the home.

■ Furthermore, none of these federal district courts considering this issue have specifically addressed the arguments raised here as to the interpretation of the Department of Agriculture's regulations, although the *Ramsey* court has come closest. 443 F.Supp. at 761. This is surely an equivocal area of the law which is as yet still developing. As plaintiffs point out in their brief, the fact that the legal principles are unsettled is not an irreparable bar to the action, and does not justify dismissing the complaint for failure to state a claim upon which relief can be granted. *Ybarra v. City of San Jose*, 503 F.2d 1041, 1043 (9th Cir. 1974).

As a matter of common sense, too, it seems only fair to permit this action. The entire goal of the Farmers Home Administration for low–income individuals is to provide houses for those who would otherwise not be able to afford them. Obviously, these persons have had little exposure to the world of real estate negotiations. It is only natural they would rely on the measured opinion of government supervisors who have special expertise in such matters and who are expressly charged with inspecting the homes to be purchased. The government, through its regulations and through its official conduct, seems to have held itself out as a protector of the underprivileged. It should now stand ready to live up to the promises it has made.

■ As a final note, we must recognize that the plaintiffs allege a cause of action against only defendants Mary Lou Falconer and Evert J. Lovec individually. But the allegations against Ms. Falconer seem to sound only in negligence and not in contract, for there is no allegation that Ms. Falconer or Mr. Lovec were ever parties to a contract with the plaintiff. Furthermore, suit against Ms. Falconer and Mr. Lovec is barred by the general rule that an agent signing a contract as an agent is not personally bound. *See, e. g., Lake City Stevedores, Inc. v. East–West Shipping Agencies, Inc.*, 474 F.2d 1060, 1063 (5th Cir. 1973); 3 C.J.S. "Agency" § 365 (1973). The claims against Ms. Falconer and Mr. Lovec should be dismissed along with the tort claims against the United States government because, since both officials were acting within the scope of their official duties, they are immune from suit. *Barr v. Matteo*, 360 U.S. 564, 569–72, 79 S.Ct. 1335, 1338–40, 3 L.Ed.2d 1434 (1959). In addition, this Court lacks jurisdiction over both Ms. Falconer and Mr. Lovec because no diversity exists. *Benbow v. Wolf*, 217 F.2d 203, 204 (9th Cir. 1954).

IT IS THEREFORE ORDERED that the motion to dismiss of the defendants United States, Farmers Home Administration, Robert Bergland, Gordon Cavanaugh, Wallace B. Edland, and Billie J. Burns be, and the same hereby is, granted as to the tort claims.

IT IS FURTHER ORDERED that the motion to dismiss of the defendants United States, Farmers Home Administration, Robert Bergland, Gordon Cavanaugh, Wallace B. Edland, and Billie J. Burns be, and the same hereby is, denied as to the contract claims.

IT IS FURTHER ORDERED that the motions to dismiss of defendants Mary Lou Falconer and Evert J. Lovec be, and the same hereby are, granted as to both the tort and contract claims.

The Clerk is directed to notify the parties of the making of this order.