**CROSS BROTHERS MEAT PACKERS**

v.

**UNITED STATES.**

Civ. A. No. 81–3525.

United States District Court,
E. D. Pennsylvania.

March 12, 1982.

Marshall A. Bernstein, Bernstein, Bernstein & Harrison, Philadelphia, Pa., for plaintiff.

Peter F. Vaira, U. S. Atty., Antoinette R. Stone, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM

GILES, District Judge.

Cross Brothers Meat Packers, Inc., (Cross) brought this action under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346,[1] 2671–2680 (1976), seeking damages of $627,-380.56 from the United States. Plaintiff alleges that, between 1977 and 1979, two Department of Agriculture meat graders employed at plaintiff's plant consistently graded plaintiff's meat in a negligent manner, causing plaintiff to lose business and

---

1. 28 U.S.C. § 1346(b) vests in the district courts

exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

profits. Cross further alleges that its repeated complaints to the graders' supervisors resulted in neither investigative nor corrective action by the Government.

The Government has moved for dismissal, or, in the alternative, summary judgment, asserting that plaintiff's claim is barred by 28 U.S.C. § 2680(h),[2] which provides that the FTCA's waiver of governmental immunity does not extend to claims arising out of misrepresentation. Plaintiff responds that its cause of action arises not from misrepresentation, but from the negligence of the Department's employees in failing to perform the grading service properly. For the reasons set forth below, the Government's motion is granted.

The seminal case interpreting the misrepresentation exception is *United States v. Neustadt*, 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961). There, the Court held that the exception barred a suit by purchasers of a home who relied upon a negligently inaccurate Federal Housing Administration (FHA) inspection and appraisal report. The plaintiffs purchased the home for a price based upon the FHA appraisal value. After moving in, they discovered a serious value-impairing structural defect not disclosed by the report. Plaintiffs sought to recover from the United States the difference between the fair market value and the purchase price.

The Court held that the claim was barred because it arose from misrepresentation of the condition and value of the house, rather than from negligent inspection.

[T]he argument has been made by plaintiffs, and consistently rejected by the courts, ... that the bar of § 2680(h) does

not apply when the gist of the claim lies in *negligence* underlying the inaccurate representation, *i.e.*, when the claim is phrased as one "arising out of" negligence rather than "misrepresentation." But this argument ... is nothing more than an attempt to circumvent § 2680(h) by denying that it applies to negligent misrepresentation.

*Id.* at 703, 81 S.Ct. at 1298 (emphasis in original).

The court also rejected plaintiffs' argument that breach of a specific statutory duty was actionable even though accompanied by misrepresentation:

To say, ... that a claim arises out of "negligence", rather than "misrepresentation", when the loss suffered by the injured party is caused by the breach of a "specific duty" owed by the Government to him, *i.e.*, the duty to use due care in obtaining and communicating information upon which that party may reasonably be expected to rely in the conduct of his economic affairs, is only to state the traditional and commonly understood legal definition of the tort of "negligent misrepresentation", as is clearly, if not conclusively, shown by the authorities set forth in the margin, and which there is every reason to believe Congress had in mind when it placed the word "misrepresentation" before the word "deceit" in Section 2680(h).

*Id.* at 706–07, 81 S.Ct. at 1300 (footnotes omitted) (citing *Restatement of Torts*, ¶ 552 (1938), *superseded, Restatement (Second) of Torts*, § 552 (1977) (negligent misrepresentation)).[3]

---

2. 28 U.S.C. § 2680(h) provides that suits may not be brought under the FTCA upon "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."

3. Furthermore, the Court implied that the National Housing Act creates no duty to the purchaser in performance of an FHA inspection. The Court pointed out that the legislative history:

repeatedly emphasized that the primary and predominant objective of the appraisal system was the "protection of the Government and its insurance funds"; that the mortgage insurance program was not designed to insure anything other than the repayment of loans made by lender-mortgagees; and that "there is no legal relationship between the FHA and the individual mortgagor." 366 U.S. at 709, 81 S.Ct. at 1301 (footnotes omitted) (quoting legislative history).

Section 2680(h) has been applied to bar suit in a variety of other contexts. For instance, in *Hall v. United States*, 274 F.2d 69 (10th Cir. 1959), owners of livestock sued to recover losses resulting from the discount sale of cattle incorrectly diagnosed by federal agents as diseased. In affirming the trial court's dismissal of the complaint, the court stated:

We must then look beyond the literal meaning of the language to ascertain the real cause of complaint. Plaintiff's real claim is that because of the negligent manner in which these tests were made, the result showed that plaintiff's cattle were diseased; whereas, in fact, they were free from disease and that the Government misrepresented the true condition of these cattle. Plaintiff's loss came about when the Government agents misrepresented the condition of the cattle, telling him they were diseased when, in fact, they were free from disease. The claim is that this misrepresentation caused plaintiff to sell his cattle at a loss. This stated a cause of action predicated on a misrepresentation. Misrepresentation as used in the exclusionary provision of the Statute was meant to include negligent misrepresentation.

*Id.* at 71. *Accord, Saxton v. United States*, 456 F.2d 1105 (8th Cir. 1972) (misrepresentation exception bars suit by plaintiffs unable to sell cattle following erroneous diagnosis that animals were not diseased); *Mizokami v. United States*, 414 F.2d 1375 (Ct. Cl.1969) (misrepresentation exception bars suit by plaintiffs who sold spinach at a loss following incorrect determination by FDA that spinach was contaminated by pesticide).

In *Marival, Inc. v. Planes, Inc.*, 306 F.Supp. 855 (N.D.Ga.1969), plaintiff sued the defendant corporation for fraudulently misrepresenting the quality of an airplane purchased from defendant. Defendant joined the United States as a third-party defendant, alleging that a Federal Aviation Administration mechanic issued a certificate of airworthiness for the aircraft and that it had relied upon the certificate in making the sale to plaintiff. Describing the crucial issue as "whether the third-party complaint is founded upon an allegation of negligent inspection of the aircraft or negligent misrepresentation, through a certificate that the aircraft was airworthy," the court concluded that since the harm was caused not by the negligent FAA inspection but by defendant's reliance upon it, the third-party complaint was based upon negligent misrepresentation. "The instant case presents a classic example of detrimental reliance upon an allegedly negligent misrepresentation in a commercial transaction. It was precisely this type of action, involving direct reliance on governmental communication of facts, rather than direct injury from negligent conduct, which § 2680(h) was designed to meet." *Id.* at 860.

To the same effect is *Preston v. United States*, 596 F.2d 232 (7th Cir.), *cert. denied*, 444 U.S. 915, 100 S.Ct. 228, 62 L.Ed.2d 169 (1979), in which the court acknowledged that misrepresentation often involves underlying negligence. The *Preston* court summarized the rule which had been followed since *Neustadt*:

It is therefore necessary to distinguish those causes of action for independent torts that only collaterally involve misrepresentations from those ... which are fundamentally grounded on the common law tort of misrepresentation. In making these determinations, the courts have followed Neustadt's distinction between personal injury or property damages arising from negligent performance of operational tasks on the one hand and injury resulting from commercial decisions taken in reliance on governmental misrepresentation on the other.

*Id.* at 238.

Thus, *Neustadt* and the subsequent case law stand for the proposition that the government may be sued for the negligent conduct of its employees, but is immune if the harm really results from negligent misrepresentation. Thus, I must determine whether this is a suit for damages which, on one hand, result directly from negligent inspection and grading, or,

on the other hand, were inflicted solely through improper grading—by reliance of plaintiff and its customers on the grades, or otherwise. Only in the former instance can this action be maintained. In making this determination, I must look at the essential substance of the complaint. *See Hall,* 274 F.2d at 71. To do otherwise would allow any plaintiff to subvert the misrepresentation exception by framing the complaint solely in terms of the act which gave rise to the misrepresentation.[4]

A fair reading of the statute, case law, complaint, and motion papers demands the conclusion that this action is barred by the misrepresentation exception. By improperly grading plaintiff's meat, the Department of Agriculture employees misrepresented to plaintiff and its customers the quality and value of the meat. The employees' conduct did not directly damage plaintiff's meat or in any way diminish its value. It was the reliance of plaintiff and its customers upon the erroneous grades that caused the losses for which plaintiff seeks recovery. That an allegedly negligent inspection preceded the misrepresentation does not change the result here because the cause of action is primarily grounded in misrepresentation. *See Preston,* 596 F.2d at 238.

Plaintiff argues that it can recover for negligence. It relies almost exclusively upon two recent cases involving, as did *Neustadt,* negligent housing inspections, but permitting suit, unlike *Neustadt,* on the basis that plaintiffs' harm was attributable to the inspection rather than the subsequent transmission of erroneous information. In *Neal v. Bergland,* 646 F.2d 1178 (6th Cir. 1981), a federal inspection report failed to reveal that the heat pump of the home purchased by plaintiff through the Farmers Home Administration (FmHA) was defective. Finding that plaintiff's suit was based on the agent's failure to exercise proper care rather than on the representation that the house was free from defects, the court reversed the district court's dismissal of the complaint.

In *Park v. United States,* 517 F.Supp. 970 (D.Or.1981), the court relied on *Neal* in holding that plaintiffs could maintain an action for the negligent inspection and preparation of their home site by FmHA agents. The court stated that "the damage ... was caused not by misrepresentations by agents of the FmHA, but by agents failing to perform their duty to inspect and supervise with reasonable care." *Id.* at 978.[5]

Plaintiff's reliance on *Neal* and *Park* is misplaced for three reasons. Both are distinguishable. Both involve personal, non-commercial decisions, rather than a profit-making business venture. *See Park,* 517 F.Supp. at 979; note 4 *supra.* Furthermore, plaintiff here has a grading-service agreement with the Department of Agriculture. Thus, its right to proper grading may

4. *Cf. Jaffee v. United States,* 663 F.2d 1226, 1235 (3d Cir. 1981) (en banc) ("If the dividing line for immunity becomes contingent on whether the act was negligent or intentional, virtually every case for negligence could now be brought successfully through 'scholastic exercises in pleading' with the mere insertion of the words 'intentional negligence.'") (quoting *Schmid v. Rumsfeld,* 481 F.Supp. 19, 21 (N.D. Cal.1974)), *cert. denied,* —— U.S. ——, 102 S.Ct. 2234, —— L.Ed.2d —— (1982).

5. The *Park* court found significant the statement of the court in *Green v. United States,* 629 F.2d 581, 584–85 (9th Cir. 1980), that the misrepresentation exception applies only in the commercial, rather than personal, context, and stated: "I hold that [plaintiffs] were not making a 'commercial decision' regarding some business or profit-making venture .... The decision to purchase and move into the home

was personal and non-commercial. The losses suffered were both personal and economic, and I hold that that claim is not barred ...." *Park,* 517 F.Supp. at 979.

In *Neustadt, supra,* the Court stated that misrepresentation "has been confined very largely to the invasion of interests of a financial or commercial character, in the course of business dealings." 366 U.S. at 711, n.26, 81 S.Ct. 1302 n.26 (quoting W. Prosser, *Handbook of the Law of Torts,* §§ 85, 702–03 (1941 ed.)). *Cf. Kipf v. United States,* 501 F.Supp. 110, 113 (D.Mont. 1980) (purchase of home through FmHA was business transaction and suit for failure to warn of defect was barred by section 2680(h)).

In this case, by contrast, economic loss was sustained by a commercial party as a result of its reliance upon allegedly inaccurate representations.

derive from contract, rather than tort law. At the least, the contract gives plaintiff here an alternate route of recovery.[6]

Second, both the *Neal* and *Park* courts buttressed their decisions with the observation that once the government decided to act, the FmHA statutory scheme, 42 U.S.C. §§ 1481–1490h, created a duty on the part of the Government to exercise due care in its dealings with citizens seeking home financing pursuant to that legislation. *Neal,* 646 F.2d at 1184; *Park,* 517 F.Supp. at 977–78. Plaintiff argues here that the Government has a similar duty under the Agricultural Marketing Act, 7 U.S.C. §§ 1621–1629, which regulates the distribution and marketing of agricultural products.

I disagree. Plaintiff relies specifically upon 7 U.S.C. § 1622(h), which directs and authorizes the Secretary of Agriculture:

> to inspect, certify, and identify the class, quality, quantity, and condition of agricultural products when shipped or received in interstate commerce, under such rules and regulations as the Secretary of Agriculture may prescribe, including assessment and collection of such fees as will be reasonable and as nearly as may be to cover the cost of the service rendered, to the end that agricultural products may be marketed to the best advantage, that trading may be facilitated, and that consumers may be able to obtain the quality product which they desire, except that no person shall be required to use the service authorized by this subsection.

■ The mere fact that the Agricultural Marketing Act was enacted for the benefit of a class of which plaintiff is a member neither gives plaintiff enforceable rights under the Act, *see, e.g., Touche Ross & Co. v. Reddington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979) (quoting *Cannon v. University of Chicago,* 441 U.S. 677, 688, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979)), nor compels the conclusion that the bar of section 2680(h) is lifted in cases in which the Government fails to perform properly the duties prescribed by the Act. The Court flatly rejected such a suggestion in *Neustadt*:

> Regarding the Court of Appeals' assertion that the Government owed respondents a "specific duty" to make and communicate an accurate appraisal of the property, . . . we . . . have found nothing from which we may reasonably infer that Congress intended, in a case such as this, to limit or suspend the application of the "misrepresentation" exception of the Tort Claims Act.

366 U.S. at 708, 81 S.Ct. at 1301.

■ Mindful that waivers of sovereign immunity must be strictly construed, *Reynolds v. United States,* 643 F.2d 707, 713 (10th Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 94, 70 L.Ed.2d 85 (1981), I find that, as in *Neustadt,* plaintiff here has shown neither that Congress intended to create enforceable tort duties under the Agricultural Marketing Act, nor that Congress intended the Act as an exception to the plain and unqualified language of section 2680(h).

Finally, I find that *Neal* and *Park* do not state the better view on the subject. At least two other courts recently have reached contrary conclusions. In *Reynolds v. United States,* 643 F.2d 707 (10th Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 94, 70 L.Ed.2d 85 (1981), and *Kipf v. United States,* 501 F.Supp. 110 (D.Mont.1980), the courts held that *Neustadt* barred suit against the government for injury or loss arising from the negligent inspection and approval of FmHA financed houses. Both courts specifically held that the plaintiffs' causes of action arose from negligent misrepresentation rather than negligence. *Reynolds,* 643 F.2d at 712; *Kipf,* 501 F.Supp. at 113. I find *Reynolds* and *Kipf* more consistent with *Neustadt* in two respects: first, in holding that the misrepresentation exception applied despite any duty of care which might exist; and second, in finding no statutory duty. *See* note 3

---

6. Because the demand is in excess of $10,000, this court lacks jurisdiction to decide any contract claim. 28 U.S.C. § 1346(a)(2).

*supra.* Thus, even if *Neal* and *Park* were indistinguishable from the facts here, I disagree with their conclusions and cannot follow them.

I therefore hold, as a matter of law, that the complaint in this case is essentially one for misrepresentation, rather than for negligence. Insofar as plaintiff's complaint charges negligence on the part of the Department of Agriculture meat graders, it is dismissed.

Plaintiff's additional claim that the failure of the graders' superiors to respond to complaints regarding the graders constituted actionable negligence also must be dismissed. It has been consistently held that section 2680(h)'s exclusion of claims arising from assault or battery, *see* note 2 *supra,* is not avoided by an allegation that the commission of the tort by a government agent is attributable to the negligence of the agent's superior. *Naisbitt v. United States,* 611 F.2d 1350 (10th Cir. 1980); *Collins v. United States,* 259 F.Supp. 363 (E.D. Pa.1966). In *Collins,* plaintiff sued the United States under the FTCA after he was assaulted by a Postal Service employee. Attempting to circumvent section 2680(h), plaintiff argued that his injuries were caused by the Government's negligence in hiring a violent employee. The court rejected plaintiff's claim, employing reasoning equally applicable to the instant case:

> It is true that the claim here is predicated on negligence. However, that negligence would have been without legal significance absent the alleged act of [the employee]. Without that, there would have been no actionable negligence. It was the attack which served to attach legal consequences to defendant's alleged negligence. Congress could easily have excepted claims for assault. It did not; it used the broader language excepting claims arising out of assault. It is plain that the claim arose only because of the assault and battery, and equally plain that it is a claim arising out of the assault and battery. This being so, the United States has not waived its immunity as respects this claim.

*Id.* at 364 (emphasis in original). Here, plaintiff cannot avoid section 2680(h) by arguing that his damage was due to superiors' negligent failure to prevent misrepresentation.

Since I conclude that plaintiff's claim is not one for which the United States has consented to be sued, this court is without subject matter jurisdiction and plaintiff's complaint is dismissed. I therefore need not reach defendant's remaining arguments.

An appropriate order follows.