William **HUNTLEY**, Lorna Huntley and Julie C. Marine Fisheries, Inc.

v.

AMERICAN **DRUGGISTS' INSURANCE CO.**, Branton Yachts Corp., George Brandariz, alias John Doe and United States Small Business Administration.

Civ. A. No. 82–0024 P.

United States District Court, D. Rhode Island.

Nov. 22, 1982.

Z. Hershel Smith, Providence, R.I., for plaintiffs.

Everett C. Sammartino, Asst. U.S. Atty., Girard Visconti, Providence, R.I., Archibald Kenyon, Wakefield, R.I., for defendants.

## OPINION AND ORDER

PETTINE, Senior District Judge.

This case involves several contract and tort claims arising out of an ill-fated business agreement between plaintiffs, William and Lorna Huntley, and defendant, Branton Yachts Corporation, which was financed through loans guaranteed by the defendant United States Small Business Administration (SBA). The SBA removed this case to federal court, pursuant to 28 U.S.C. § 1441 (1973). It now moves under Fed.R.Civ.P. 12(b)(6) to dismiss the complaint on the ground that it fails to state a claim upon which relief can be granted. "[I]t is well established that, in passing on a motion to dismiss ... for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The following summary of the facts is thus taken from the allegations in the plaintiffs' complaint.

### Facts

The plaintiffs, William and Lorna Huntley, contracted with the defendant Branton Yachts Corporation for the construction of a fishing boat. Although not a party to this contract, the defendant SBA played an important role in its financing. Prior to the contract the SBA was the guarantor of a $250,000 loan to the Branton Yachts Corpo-ration. This loan was in default. When the contract was made, however, the SBA agreed to a financing package under which the loan to Branton Yachts was rewritten in the amount of approximately $500,000 and the plaintiffs were loaned approximately $526,000. The SBA guaranteed the loans to the plaintiffs and defendant Branton Yachts through the Greater Providence Deposit Corporation.

Plaintiffs allege that the SBA knew that a material term of the contract with Branton Yachts was that the boat be completed by March, 1982, so that it would be available for use in the spring fishing season. To ensure the boat's timely and proper construction, the plaintiffs insisted that Branton Yachts furnish a performance bond. Such a bond was issued by the defendant American Druggists Insurance Company and guaranteed by the SBA. Defendant George Brandariz, the principal officer and majority stockholder of Branton Yachts Corporation, also warranted to the plaintiffs that the fishing boat would be timely constructed in accordance with the terms of the contract.

Plaintiffs contend that from the beginning Branton Yachts Corporation failed to comply with the material terms of the contract. As a result, they believed that the fishing boat would not be timely and properly completed and demanded written assurances from Branton Yachts. In response to the plaintiffs' demand, the SBA called a meeting of all the parties. At this meeting Branton Yachts promised to provide the plaintiffs with a work schedule and assurances from the bank that they were financially capable of completing the boat's construction. At the end of the meeting, the SBA told the plaintiffs that "you'd better be satisfied that the defendants will do the job properly. If you need any more help come and see us." Complaint at 5. Plaintiffs agreed to permit the continued construction of the boat.

Plaintiffs allege that Branton Yachts did not fulfill the promises it made at the meeting. They contend that Branton Yachts

provided them with only a partial work schedule and failed to comply with the terms of that schedule. Moreover, the bank failed to provide adequate assurance as to Branton Yacht's financial capacity. Plaintiffs thereupon requested the assistance of the SBA in getting Branton Yachts to live up to its promises. The SBA, however, merely told the plaintiffs to write Branton Yachts a letter detailing their complaints and refused to intervene on their behalf.

### Discussion

Plaintiffs contend that their Complaint is based on the tort principle that "[o]ne who undertakes gratuitously or for consideration to render services to another which he should recognize as necessary for the protection of the other person or things..." may under certain circumstances by held liable. Restatement (Second) of Torts, § 323 at 135 (1965). In this case, the plaintiff asserts that the SBA undertook and negligently failed to perform "the duty to see to it that defendant, Branton Yachts Corporation carried out its obligations under the contract." Plaintiffs' Memorandum in Opposition to the Motion to Dismiss at 6. The defendant SBA denies liability in tort and has moved to dismiss this suit for failure to state a claim upon which relief can be granted. It argues that the plaintiffs' claim must be characterized as one of misrepresentation and that, consequently, it is barred by the sovereign immunity of the United States.

This case requires the Court to interpret the scope of § 2680(h) of the Federal Tort Claims Act. 28 U.S.C. § 2680(h) (1982 Supp.). That section creates an exception to the Act's waiver of the sovereign immunity of the United States in tort actions for "[a]ny claim arising out of ... misrepresentation." It is not disputed that if the claim is in fact one of misrepresentation, then it cannot be brought against the SBA which is an agency of the United States. Rather, the critical issue presented is whether the plaintiffs' claim must be characterized as one of misrepresentation.

The starting point for an analysis of the character of the plaintiffs' claim is *United States v. Neustadt,* 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961). In that case the Supreme Court held that a home purchaser's claim against the United States for damages resulting from the purchaser's reliance on an inaccurate Federal Housing Administration inspection and appraisal constituted a claim of misrepresentation, and thus was not actionable against the United States. In so holding, the Supreme Court reversed the Fourth Circuit which had ruled that if the government negligently performs a specific duty owed to another it may be liable for damages "even though the careless performance of the duty may have been accompanied by some misrepresentation of fact." *United States v. Neustadt,* 281 F.2d 596, 599 (4th Cir.1960). The Supreme Court explained that:

> To say, as the Fourth Circuit did, that a claim arises out of "negligence," rather than "misrepresentation," when the loss suffered by the injured party is caused by the breach of a "specific duty" owed by the Government to him, i.e., the duty to use due care in obtaining and communicating information upon which that party may reasonably be expected to rely in the conduct of his economic affairs, is only to state the traditional and commonly understood legal definition of the tort of "negligent misrepresentation"....

366 U.S. at 706, 81 S.Ct. at 1300.

The Court further concluded in *Neustadt* that Congress intended to include "negligent misrepresentation" as an exception to the allowable tort claims against the government when it drafted § 2680(h). *Id.*

The plaintiffs seek to rely on *Neal v. Bergland,* 646 F.2d 1178 (6th Cir.1981), *cert. granted,* —— U.S. ——, 102 S.Ct. 2267, 73 L.Ed.2d 1282 (1982), to support their contention that their claim is not one of misrepresentation. In *Bergland* it was held that 2680(h) of the Federal Tort Claims Act did not create a bar to a suit against representatives of the United States for the cost of correcting construction defects in a prefabricated house built under a contract providing that construction conform to plans

approved by the Farmers Home Administration. Distinguishing *Neustadt,* the Sixth Circuit noted that the "[p]laintiffs claim, as we read it, is not based on misrepresentation, as in the issuance of a false or inaccurate appraisal report, but rather on the FmHA's failure to use due care in a voluntary undertaking, i.e., inspection and supervision of the construction of her house." *Id.* at 1184.

The claims considered in *Bergland* and the present case are based on § 323 of the Restatement (Second) of Torts (1965), which provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

The principle expressed in § 323, according to the Sixth Circuit, is the same one that was applied in *Indian Towing Co. v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955). *Neal v. Bergland,* 646 F.2d at 1181–82. In that case the Supreme Court held that a claim for property damages to a vessel that resulted from the Coast Guard's allegedly negligent failure to maintain the beacon lamp in a lighthouse was not a misrepresentation claim barred by the Federal Tort Claims Act. The Supreme Court had specifically recognized in *Neustadt* that its opinion did not impair the authority of *Indian Towing. United States v. Neustadt,* 366 U.S. at 711 n. 26, 81 S.Ct. at 1302 n. 26. By equating claims brought under § 323 of the Restatement (Second) of Torts with those based on *Indian Towing,* the Sixth Circuit interpreted the misrepresentation exception as also not applying to § 323 claims.

This Court cannot accept the Sixth Circuit's interpretation of the scope of § 2680(h). The Supreme Court's conclusion in *Neustadt* that its holding did not impair the authority of *Indian Towing* does not mean that all actions brought under § 323 of the Restatement (Second) of Torts also do not fall within the scope of § 2680(h). In *Neustadt* the Supreme Court distinguished the claim made in *Indian Towing* by observing that it

does not "arise out of . . . misrepresentation" any more than does one based upon a motor vehicle operator's negligence in giving a misleading turn signal. As Dean Prosser has observed, many familiar forms of negligent conduct may be said to involve an element of "misrepresentation," in the generic sense of that word, but "[s]o far as misrepresentation has been treated as giving rise in and of itself to a distinct cause of action in tort, it has been identified with the common law action of deceit," and has been confined "very largely to the invasion of interests of a financial or commercial character in the course of business dealing." Prosser, Torts § 85, "Remedies for Misrepresentation," at 702–703 (1941 ed.). See also Harper and James, Torts, § 29.13 at 1655 (1956).

366 U.S. at 711 n. 26, 81 S.Ct. at 1302 n. 26.

*Indian Towing* thus does not provide a basis for asserting a negligence claim under the Federal Torts Claims Act in all cases in which the United States negligently performs an act voluntarily undertaken. Rather, to determine if a claim asserting the negligent performance of an act voluntarily undertaken may be brought under the Act, it is necessary to distinguish between claims involving "personal injury or property damages arising from negligent performance of operational tasks on the one hand" from claims asserting "injury resulting from commercial decisions taken in reliance on governmental misrepresentations on the other." *See Preston v. United States,* 596 F.2d 232, 238 (7th Cir.1979), *cert. denied* 444 U.S. 915, 100 S.Ct. 228, 62 L.Ed.2d 169 (1979). *See also Green v. United States,* 629 F.2d 581, 584–85 (9th Cir. 1980); *Cross Brothers Meat Packers v. United States,* 533 F.Supp. 1319, 1321 (E.D. Pa.1982).

Upon analysis of the plaintiffs' Complaint and motion papers in this case, the Court is firmly convinced that their claim against defendant SBA is grounded on the tort of negligent misrepresentation. The Complaint alleges that the SBA breached a fiduciary duty to the plaintiffs by leading them "to believe in and rely on the defendants, Branton Yachts Corporation and George Brandariz' promises that the ... (fishing) boat would be properly and timely constructed when in fact said defendant knew or should have known that the said boat would not be so constructed...." Complaint at 6. Even if it is assumed that the SBA voluntarily undertook the duty of ensuring that Branton Yachts would comply with the terms of its contract with the plaintiffs, the SBA's negligent performance of this duty involves injury resulting from a commercial decision taken in reliance on a governmental misrepresentation. This is the essence of misrepresentation, not negligence. What was said in *Zimmerman v. Susie,* 534 F.Supp. 626 (W.D.Pa.1982) is equally true here.

> A person who fails to use due care in obtaining information which, in the course of his business, he supplies to someone else for their use is liable for damages under the theory of misrepresentation, not under a general theory of negligence. The failure to inspect alleged here, the "negligent performance of an operational task" referred to by the Sixth Circuit, when applied to one who is alleged to have a duty to supply information, is nothing more than a failure to use reasonable care in the collection of information, i.e., the tort of misrepresentation. *Id.* at 630.

*See also Green v. United States,* 629 F.2d at 584–85.

Accordingly, the Court concludes that the plaintiffs' reliance on *Bergland* is misplaced and rejects their contention that their claim falls outside the scope of the misrepresentation exception to the Federal Tort Claims Act.[1] *See Somali Development Bank v. United States,* 508 F.2d 817, 820–22 (Ct.Cl. 1974) (claim that government agency owed fiduciary duty to plaintiffs and assumed responsibility as the guarantor of the success of a project in which they were involved interpreted as negligent misrepresentation claim). This simply is not a case like *Indian Towing* in which personal injury or property damage has resulted from the negligent performance of an operational task. Since the other claims raised in the plaintiffs' complaint solely involve issues of state law and the Court does not possess diversity jurisdiction, the remaining claims are dismissed without prejudice.

---

1. Even assuming the validity of the Sixth Circuit's analysis in *Bergland,* this Court believes that the plaintiffs' claim against the SBA must be dismissed because the plaintiffs have failed to establish a prima facie negligence claim. The facts alleged by the plaintiffs simply do not support their claim that the SBA did in fact undertake the duty to see to it that Branton Yachts carried out its obligations under the contract. Moreover, this is not a case like *Bergland* in which there exists a statutory duty on the part of a government agency to render the assistance to which the plaintiffs claim they are entitled. *See Cross Brothers Meat Packers v. United States,* 533 F.Supp. 1319, 1323 (E.D. Pa.1982).