Alexander SCOTT, Jr. and Marceal Scott, Plaintiffs,

v.

FIRST INVESTMENT CORPORATION, a corporation; Urban Redevelopment Authority of Pittsburgh, a local Government agency, and United States Department of Housing and Urban Development, a branch of the United States of America, Defendants.

Civ. A. No. 82–2153.

United States District Court, W.D. Pennsylvania.

Feb. 17, 1983.

Samuel P. Kamin, Pittsburgh, Pa., for plaintiffs.

Sharon M. O'Neill, Pittsburgh, Pa., for Urban Development.

L.F. Grimm, Jr., Pittsburgh, Pa., for First Inv. Corp.

Anthony M. Mariani, Pittsburgh, Pa., for U.S. Dept. of Housing and Urban Development.

## MEMORANDUM OPINION AND ORDER

COHILL, District Judge.

This case is now before us on motions to dismiss filed by all three defendants. We have jurisdiction pursuant to 28 U.S.C. §§ 1331, 1346(a)(2) and 1346(b).

### Facts

The plaintiffs, a married couple, bought a house in Pittsburgh from the Urban Redevelopment Authority of Pittsburgh (URA), closing on May 11, 1979. Prior to the closing, on June 21, 1978, one P.W. Pacella from the Department of Housing and Urban Development (HUD) had inspected the property, a reconditioned house at 533 Junilla Street, Pittsburgh, and appraised it for the purpose of determining eligibility for the Federal Housing Administration (FHA) insuring a mortgage on the property. This inspection was approved by the chief architect of the URA. *See* Exhibit B to Complaint.

On July 5, 1979, the plaintiffs moved into the house. Within a month they discovered that the sewer line was broken. The plaintiffs claim that repair costs totaled $7,753.16; they seek damages of between $5,000 and $10,000. This ceiling avoids the mandatory jurisdiction of the Court of Claims on non-tort claims over $10,000. *See* 28 U.S.C. § 1346(a)(2).

### Legal Bases for Claims

The plaintiffs' complaint contains two counts: assumpsit and trespass. The legal bases advanced for the claims appear to be essentially as follow:

1. Breach of implied or explicit warranty of habitability because the sewer condition violated Pittsburgh ordinances.

2. Failure to inspect (First Investment Co.) or negligent inspection (other defendants) of the house.

While we shall consider both theories as they relate to each defendant, we note that counsel for the plaintiffs conceded at oral argument that they could not make out a claim on any tort theory. Instead, the plaintiffs have elected to proceed on a con-

tract-based warranty theory, premising liability for First Investment and HUD as third-party beneficiaries of the contract of sale between the Scotts and the URA.

### Disposition of Claims
*First Investment Corporation:*

██ The plaintiffs have clearly failed to state a cause of action against First Investment Corporation, whose only role in the transaction was that of lender. A lender has no duty to make an inspection, and any inspection made is for the lender's benefit and not for the borrower. *See Federal Land Bank of Baltimore v. Fetner,* 269 Pa. Super. 455, 410 A.2d 344 (1980). The contract between the plaintiffs and First Investment Corporation does not contain any express warranty of the condition of house. Furthermore we could find no case which suggests that someone acting only as a *lender* makes any implicit warranty as to the condition of the property serving as security for its loan. Consequently the complaint fails to state a claim on which relief can be granted and must be dismissed as to the defendant, First Investment Corporation.

*Urban Redevelopment Authority of Pittsburgh:*

██ The URA sold the house to the Scotts. The URA did not, however, build the house, nor did it extend an explicit warranty to the plaintiffs. Under Pennsylvania law, an implied warranty of habitability is present when a builder or developer sells a new house, *see Elderkin v. Gaster,* 447 Pa. 118, 288 A.2d 771 (1972), but to our knowledge, no Pennsylvania state court has ever extended this warranty to the sale of a previously occupied house.

██ The plaintiff cites *City of Philadelphia v. Page,* 363 F.Supp. 148 (E.D.Pa.1973), for the proposition that a housing authority impliedly warrants the condition of a dwelling it sells. The facts in *City of Philadelphia v. Page* were as follows: the city sued the Pages, the buyers of a HUD rehabilitated property, for violation of an ordinance prohibiting the presence of lead-based paint in a dwelling. The Pages, in turn, brought in HUD as a third-party defendant on an implied warranty theory. The *Page* court denied HUD's motion to dismiss, finding an implied warranty based, in large part on § 221(d)(2) of the National Housing Act, 12 U.S.C. § 1715*l*(d)(2). 363 F.Supp. at 152. Section 221(d)(2) mandates that in order to be eligible for mortgage insurance, a residence must meet "the requirements of all ... local ordinances." 12 U.S.C. § 1715*l* (d)(2).

Whatever we might think of the *Page* court's interpretation of § 221(d)(2) of the National Housing Act, we are no longer free to agree with it. In *Davis v. Romney,* 490 F.2d 1360 (3d Cir.1974), the court of appeals explicitly held that § 221(d)(2) does not create a cause of action for damages. 490 F.2d at 1371–1372.

At oral argument, counsel for the plaintiff indicated that this action is based on the theory of liability developed in *Kipf v. United States,* 501 F.Supp. 110 (D.Mont. 1980). *Kipf* involved defects in a dwelling purchased with money from a Farmers Home Administration (FmHA) mortgage. The FmHA inspected the dwelling prior to issuing the mortgage and found it in good condition. The court in *Kipf* held that while there could be no tort claim against the FmHA, Department of Agriculture regulations created a duty to inspect the property and failure of the FmHA properly to do so gave rise to a cause of action. *See* 501 F.Supp. at 113. We believe that *Kipf* is distinguishable from the present case because the cause of action in *Kipf* rested on regulations unique to the Department of Agriculture and, as a result, not involved here. To the extent that *Kipf* is not distinguishable from the case now before us, we believe it is inconsistent with *Davis v. Romney,* 490 F.2d 1360 (3d Cir.1974) and we are, of course, bound by *Davis v. Romney.*

Because § 221(d)(2) of the National Housing Act creates no cause of action for damages, the complaint must be dismissed as regards the claims against the URA.

*Department of Housing and Urban Development:*

The same reasoning which requires the dismissal of the complaint against the URA also applies to the claims against HUD. Furthermore, any claim based on a warranty theory would fail against HUD because it made no contract with the Scotts. We find the notion that HUD could be held liable as a third-party beneficiary of the URA's contract with the Scotts is without merit. There is also another reason to dismiss any tort claim against HUD. The substance of the plaintiffs' claims is the tort of misrepresentation, either knowing or negligent. The plaintiffs essentially alleged reliance on inaccurate statements made by an agent of HUD, P.W. Pacella. Even assuming the complaint were amended to name the United States a defendant as required by the Federal Tort Claims Act §§ 1346(b), 2671 *et seq.*, and even further assuming that the plaintiffs complied with the jurisdictional prerequisites and the statute of limitations, the plaintiffs' claims against the United States would still fail because 28 U.S.C. § 2680(h) exempts the government from liability flowing from negligent misrepresentation or deceit. *See United States v. Neustadt,* 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961); *Zimmerman v. Susie,* 534 F.Supp. 626 (W.D.Pa.1982) (McCune, J.).

AND NOW, to-wit, this 17th day of February, 1983, for the reasons stated, it is ORDERED, ADJUDGED and DECREED that the Complaint in the above-captioned case be, and hereby is, DISMISSED.