**Onilea NEAL, Plaintiff-Appellant,**

v.

**Robert BERGLAND et al., Defendants-Appellees.**

No. 80–1278.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 2, 1980.

Decided May 1, 1981.

Lenny L. Croce, Rural Legal Services, Oak Ridge, Tenn., for plaintiff-appellant.

John H. Cary, U. S. Atty., Richard K. Harris and J. Michael Haynes, Jr., Asst. U. S. Attys., Knoxville, for defendants-appellees.

Before MERRITT and MARTIN, Circuit Judges, and COHN, District Judge.*

I.

COHN, District Judge.

Plaintiff appeals from a dismissal of her action against Robert Bergland, Secretary

---

* Honorable Avern Cohn, United States District Judge, Eastern District of Michigan, sitting by designation.

of Agriculture, and others,[1] for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction. The District Court, in a decision reported at 489 F.Supp. 512 (E.D.Tenn. 1980), held that neither Title V of the Housing Act of 1949 (the Act), 42 U.S.C. § 1471 *et seq.*, nor regulations issued thereunder, 7 C.F.R. § 1802.71 *et seq.*, create an obligation on the part of the Farmers Home Administration (FmHA)[2] to supervise, inspect or warrant the construction of the prefabricated house built for plaintiff by defendant Home Marketing Associates (Home Marketing) and financed by FmHA.

For the reasons that follow we reverse and remand for further proceedings.

## II.

Plaintiff is an unmarried woman in her mid-fifties with less than a high school education. She has never before owned a home. After an unsuccessful attempt to find housing to rent or purchase within her financial means, plaintiff applied for and received a direct rural housing loan from FmHA in 1976.

Plaintiff then consulted with defendant Parkison and entered into a construction contract with defendant Home Marketing for the construction of a prefabricated house. The contract provided that construction conform to FmHA approved plans; that changes in the plans be made only with the written approval of FmHA; and that FmHA have the right to inspect or test all materials and workmanship and reject any that were defective.

During the course of construction, defendant Wells conducted inspections of the house when it was 2% complete, 99% complete and 100% complete. There were no notes or comments in any of her inspection reports indicating any condition at variance with the approved plans and specifications.

Upon completion of construction, defendant Home Marketing issued plaintiff a one year builder's warranty as required by FmHA, which represented construction was in conformance with the drawings and specifications approved by FmHA and the minimum property standards published by the Department of Housing and Urban Development. The warranty covered workmanship, materials and equipment including the heating system.

In December 1977 plaintiff notified FmHA and defendant Home Marketing that the heat pump in her house was not working properly. Defendant Avery and other FmHA officials inspected the house and notified defendant Home Marketing of thirteen defects, including the heat pump, which needed correction. Defendant Home Marketing failed to cure the defects.

In November 1978 plaintiff asked FmHA to pay for correcting the heating system and other construction defects. It declined. After exhausting her administrative remedies, 28 U.S.C. § 2675, plaintiff brought this suit.

## III.

The case was started in the Circuit Court of Roane County, Tennessee and thereafter removed to the United States District Court for the Eastern District of Tennessee by defendant Bergland. 28 U.S.C. § 1441.

In her amended complaint plaintiff alleged a breach of contract by FmHA for failure to provide technical assistance including inspection and supervision of construction of the house; negligence for failure to properly execute its obligation to

---

**1.** Other defendants are Gordon Cavanaugh, Administrator of the Farmers Home Administration; Earl Wayne Avery, Tennessee State Director of the Farmers Home Administration; S. Lane Parkison, Roane County Supervisor of the Farmers Home Administration; Mary C. Wells, Assistant Roane County Supervisor of the Farmers Home Administration; Home Marketing Associates, Inc., a construction company; and C. E. Scott, Jr., Gary Humphreys and Wayne Humphreys, employees of or doing business as Home Marketing Associates, Inc.

**2.** FmHA is an agency of the Department of Agriculture authorized by § 502 of Title V of the Housing Act of 1949, 42 U.S.C. § 1472, to extend financial assistance in home construction and purchase to persons of low to moderate income residing in rural areas.

inspect and supervise construction of the house; and detrimental reliance for failure to perform its regulatory obligations as promised. Plaintiff also sought mandamus to compel defendant Bergland to compensate her for the construction defects in the house under Section 509 of the Act, 42 U.S.C. § 1479(c).[3]

In essence, plaintiff alleged the Act and the regulations under it created an obligation on the part of FmHA to supervise construction of the house to ensure compliance with the purpose of the FmHA loan program which the Act recites is for rural residents to obtain "decent, safe, and sanitary living conditions . . . ." 42 U.S.C. § 1471(a).

The District Court rejected plaintiff's claims and remanded the case to the state court holding there is no duty owed plaintiff by FmHA under the Act since the purpose of the rural housing loan program is limited to providing participants with an opportunity to obtain decent housing and not to make the government "an insurer of the quality of the workmanship or structures funded with the loan proceeds." 489 F.Supp. at 514. The District Court equated FmHA's position with that of a mortgagee and looked at supervision of construction authorized by the regulations as a means of protecting FmHA's security interest in the mortgaged property.

> "To hold the FmHA liable for the shoddy work of the contractor would be tantamount to making a mortgagee the warrantor of the quality of its security."

489 F.Supp. at 515.

## IV.

### A.

The Secretary of Agriculture is authorized by § 502 of the Act, 42 U.S.C. § 1472, to extend financial and technical assistance, through FmHA, to eligible rural residents to enable them to obtain "decent, safe, and sanitary" housing. 42 U.S.C. § 1471(a). The regulations state,

> "The basic objective of the Farmers Home Administration (FmHA) in making section 502 loans is to assist farm owners and other persons who will live in rural areas to obtain decent, safe, and sanitary dwellings and related facilities. The purpose of these loans is to give families, who do not have sufficient resources to provide such dwellings and related facilities on their own account and cannot obtain the necessary credit from other sources on terms and conditions they reasonably can be expected to meet, an opportunity to have adequate homes."

7 C.F.R. § 1822.2.

FmHA is authorized to provide financial assistance either by direct loans through the Secretary of Agriculture pursuant to section 502 of the Act, 42 U.S.C. § 1472, or by insured or guaranteed loans pursuant to section 517 of the Act, 42 U.S.C. § 1487, and the regulations, 7 C.F.R. § 1841.46 et seq.

Although Title V focuses on financial assistance, S. Rep. No. 84, 81st Cong., 1st Sess. 2, reprinted in [1949] U.S.Code Cong.Serv. 1550, 1576, Congress has also provided for research and technical services "pointed toward more efficient and more economical construction" of houses and related structures. Id. Section 506 of the Act provides,

> "Buildings and repairs constructed with funds advanced pursuant to this subchapter shall be supervised and inspected as required by the Secretary. In addition to the financial assistance authorized . . . the Secretary is authorized to furnish . . . technical services such as building plans, specifications, construction supervision and inspection . . . ."

42 U.S.C. § 1476(a) (emphasis added).

The regulations provide:

> "Supervision will be provided borrowers to the extent necessary to achieve the objectives of the loan and to protect the interests of the Government . . . ."

7 C.F.R. § 1822.7(a).

Thus while it may be said that the overall objective of the loan program is to provide

---

**3.** At oral argument plaintiff represented defendant had satisfied this request thereby mooting this issue.

rural residents an opportunity for decent, safe, and sanitary housing, it is to be noted that Congress has specifically authorized FmHA to provide technical assistance and supervision of construction.

### B.

■ Plaintiff's contract claim turns on the nature and extent of FmHA's obligation, if any, to provide technical assistance and to inspect and supervise construction. To find FmHA had a contractual obligation it must be expressly provided for either in the Act, the regulations, or the loan papers, or it must be implied in fact from the circumstances surrounding plaintiff's dealings with FmHA, since there can be no right of action against the United States for a contract implied in law. 28 U.S.C. § 1346; [4] *Goodyear Tire & Rubber Co. v. United States*, 276 U.S. 287, 293, 48 S.Ct. 306, 307, 72 L.Ed. 575 (1928).

There is no allegation that FmHA expressly promised to provide assistance and neither in the Act nor the regulations is there an explicit obligation on the part of FmHA to inspect or supervise construction for plaintiff's benefit. The right to inspect, without more does not imply an obligation to inspect. *Kaminer Construction Corp. v. United States*, 488 F.2d 980 (Ct.Cl.1973).

Section 506 of the Act, 42 U.S.C. § 1476(a), authorizes the Secretary of Agriculture to furnish a borrower technical services; the regulations governing rural housing loans, 7 C.F.R. § 1822.7, provide that such assistance will be rendered "to the extent necessary" to achieve the loan objectives; 7 C.F.R. § 1804.4(g)(3), govern-

ing planning and performing development work, provides that inspections will be made "as frequently as necessary to assure that construction and land development conforms with the plans and specification"; and 7 C.F.R. § 1802.73 and § 1802.74, governing supervision of borrowers, provide for "supervision necessary to accomplish the objectives of the loan," with emphasis given to, *inter alia*, maintaining the security and protecting the interest of FmHA. Borrowers are to be supervised "to the extent necessary to assure . . . protection of the FmHA's financial interest." 7 C.F.R. § 1802.74. None of these provisions include a clearly defined obligation on the part of FmHA running to plaintiff to perform any supervisory function, but instead speak in terms of discretion on the part of FmHA to render such assistance as it deems necessary to achieve the objectives of the loan program and for the protection of its security interest.

We find that no contractual obligation existed on the part of FmHA to provide technical assistance or to supervise construction or to inspect.

*See Ramsey v. Farmers Home Administration*, 443 F.Supp. 760 (E.D.Mo.1978); *Adamsville Lumber Co., Inc. v. Rainey*, 348 F.Supp. 373 (W.D.Tenn.1972); *Forcum-Lannon, Inc. v. Berry*, 344 F.Supp. 774 (W.D.Tenn.1972).

### C.

■ Plaintiff's tort claim, however, is on firmer ground; namely the principle expressed in § 323 of the Restatement (Second) of Torts (1965) [5] that one who un-

---

**4.** The Tucker Act, 28 U.S.C. § 1346, governs contract actions against the United States. It provides,

"(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

\* \* \* \* \* \*

(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded . . . upon any express or implied contract with the United States . . . ."

This section acts as a waiver of sovereign immunity and therefore allows the United States

to be sued in contract. *Tempel v. United States*, 248 U.S. 121, 129, 39 S.Ct. 56, 58, 63 L.Ed.2d 162 (1918); *National Bank of Newark v. United States*, 357 F.2d 704, 706 (Ct.Cl.1966).

**5.** Restatement (Second) of Torts § 323 provides:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

dertakes to act, even though gratuitously, is required to act carefully and with the exercise of due care and will be liable for injuries proximately caused by failure to use such care. The Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, authorizes suit against the United States for this kind of claim since the act constitutes a waiver by the United States of its immunity from liability in tort for the acts of its employees and representatives. *Reminga v. United States,* 631 F.2d 449 (6th Cir. 1980); Annot., 30 A.L.R. Fed. 421, 430 (1976). This act makes the United States liable, with certain exceptions, 28 U.S.C. § 2680, for the negligence of its employees "in the same manner and to the same extent as a private individual under like circumstances . . . ." 28 U.S.C. § 2674.

The principle expressed in the Restatement is not new, *Erie R. Co. v. Stewart,* 40 F.2d 855 (6th Cir. 1930), and has been applied in a number of situations in which a government agency performed the undertaking. *Ingham v. Eastern Air Lines, Inc.,* 373 F.2d 227 (2d Cir.), *cert. denied,* 389 U.S. 931, 88 S.Ct. 295, 19 L.Ed.2d 292 (1967), for example, deals with a negligent act occurring in the operation of the federal air traffic control system.

"It is now well established that when the government undertakes to perform services, which in the absence of specific legislation would not be required, it will, nevertheless, be liable if these activities are performed negligently. Thus, for example, though the government may be under no obligation in the absence of statute to render medical care to discharged veterans, when it decides to provide such services and does so negligently, it has been held liable under the Tort Claims Act. *United States v. Brown,* 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954)."

373 F.2d at 236.

In *Indian Towing Co. v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), this principle was applied to the Coast Guard in a situation where it was charged with failure to maintain the beacon lamp in a lighthouse resulting in damage to a barge that went aground. The Supreme Court said that while the Coast Guard need not have undertaken the lighthouse service, once it exercised its discretion to operate the light, thereby engendering reliance on the guidance afforded by the light, it was obligated to use due care to maintain the light and to make repairs or give warnings when the light was not functioning. For failure to do so it was liable in money damages for any injury which resulted.

The government has been held liable for the negligence of its employees in the way they put out a forest fire, *Rayonier, Inc. v. United States,* 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957); for the negligent design and construction of a drainage ditch which caused damage to a railroad, *Seaboard Coast Line Railroad Co. v. United States,* 473 F.2d 714 (5th Cir. 1973); for negligence of the Coast Guard in undertaking a rescue operation, *United States v. DeVane,* 306 F.2d 182 (5th Cir. 1962); for negligence in inaccurately marking the location of a wrecked ship, *Somerset Seafood Co. v. United States,* 193 F.2d 631 (4th Cir. 1951); and for negligence in failing to require a subcontractor to comply with a contract's safety requirements, *Barron v. United States,* 473 F.Supp. 1077 (D.Hawaii 1979).

## V.

Where claims for negligence against the government have been barred by the Federal Tort Claims Act, *United States v. Neustadt,* 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961) and its progeny, circumstances different than the case at bar were involved.

In *Neustadt,* plaintiffs purchased a house with a private mortgage loan insured by the Federal Housing Administration (FHA) pursuant to § 203 of the National Housing Act of 1934, 12 U.S.C. § 1709. In determin-

---

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking."

ing whether the house was eligible for FHA mortgage insurance, the FHA made an inspection and assigned an appraised value to establish the maximum amount of mortgage insurance obtainable. 24 C.F.R. §§ 200.140–200.152. FHA found no defects in the house and issued an insurance commitment. Pursuant to § 226 of the National Housing Act of 1934, 12 U.S.C. § 1715q, the seller provided plaintiffs with a copy of the appraisal report.

Shortly after plaintiffs took possession, the foundation of the house began to shift causing substantial damage to interior and exterior walls. Plaintiffs sued FHA claiming it negligently inspected and appraised the house. Plaintiffs sought recovery of the difference between the fair market value and the purchase price paid claiming they relied on the excessive FHA appraisal.

The Supreme Court denied plaintiff's recovery on the grounds the purpose of the FHA appraisal program is the " 'protection of the Government and its insurance funds' ", 366 U.S. at 709, 81 S.Ct. at 1301, and that any tort committed by FHA because of an inaccurate report resulting from negligent inspection of the house, would be one "arising out of . . . misrepresentation" a specie of claims which is specifically excluded from coverage by the Federal Tort Claims Act, 26 U.S.C. § 2680(h).[6]

> "[T]he duty to use due care in obtaining and communicating information upon which that party may reasonably be expected to rely in the conduct of his economical affairs, is only to state the traditional and commonly understood legal definition of the tort of 'negligent misrepresentation' . . . ."

366 U.S. at 706, 81 S.Ct. at 1300. *See also United States v. Lawrence Towers, Inc.*, 236 F.Supp. 208 (E.D.N.Y.1964).

Examples of *Neustadt* type situations are *Green v. United States*, 629 F.2d 581 (9th Cir. 1980), involving a suit by cattle owners against the United States for losses sustained from the application of DDT to cattle grazing land and the failure to adequately warn of the consequences of the chemical; *Preston v. United States*, 596 F.2d 232 (7th Cir. 1979), involving a suit by farmers against the United States for losses sustained as a result of storing grain in a warehouse approved by the Department of Agriculture which went bankrupt; and *Marival, Inc. v. Planes, Inc.*, 306 F.Supp. 855 (N.D.Ga.1969), involving a third-party action by the seller of an airplane against the United States for the negligent certification of airworthiness of the airplane given by the Federal Aviation Administration which caused the seller to misrepresent the condition of the plane to the buyer.

Cases distinguishing *Neustadt* illustrate the difference between the application of the Federal Tort Claims Act to a situation dealing with a cause of action based on misrepresentation and a cause of action based on negligent performance of an operational task. In *Ware v. United States*, 626 F.2d 1278 (5th Cir. 1980), the negligent misrepresentation exception was held inapplicable to a suit by a farmer against the United States for losses sustained when the Government destroyed his cattle after the Department of Agriculture negligently misdiagnosed them as tubercular.

> "The government's misrepresentation caused Ware to do nothing save remain in ignorance that he had suffered a compensable loss. The government not Ware, destroyed the cattle and caused the damage. Ware's complaint, thus, arose out of, not a negligent misrepresentation, but an allegedly negligent misdiagnosis that caused the government to destroy his cattle."

626 F.2d 1283.

In *In Re Air Crash Disaster Near Silver Plume,. Colo.*, 445 F.Supp. 384 (D.Kan.1977),

---

**6.** 'The provisions of this chapter and section 1346(b) of this title shall not apply to—
    \*   \*   \*   \*   \*   \*
    (h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit or interference with contract rights . . . ."
28 U.S.C. § 2680(h).

there was a claim of negligent failure on the part of a government employee to perform an operational duty to properly inspect an aircraft. The District Court held,

> "It is the inspection undertaken to protect air travelers from certain dangers which is relied upon by such travelers and which, if negligently performed, gives rise to the very dangers the inspection was intended to prevent. The certification is a reporting of results of such inspection but was not in itself relied upon by plaintiffs in any economic affairs."

445 F.Supp. at 409.

## VI.

■ Plaintiff's claim, as we read it, is based not on misrepresentation, as in the issuance of a false or inaccurate appraisal report, but rather on FmHA's failure to use due care in a voluntary undertaking, i. e., inspection and supervision of the construction of her house. Congress, we believe, intended plaintiff to be the beneficiary of the inspection and technical assistance offered by FmHA given the purpose of the Act and plaintiff's particular circumstances.

The Supreme Court in *Neustadt* noted the distinction we make that its decision "neither conflicts with nor impairs" the authority of *Indian Towing Co. v. United States, supra,* saying:

> "As Dean Prosser has observed, many familiar forms of negligent conduct may be said to involve an element of 'misrepresentation,' in the generic sense of that word, but '[s]o far as misrepresentation has been treated as giving rise in and of itself to a distinct cause of action in tort, it has been identified with the common law action of deceit,' and has been confined 'very largely to the invasion of interests of a financial or commercial char-

acter, in the course of business dealings.' Prosser, Torts, § 85, 'Remedies for Misrepresentation,' at 702–703 (1941 ed.). See also 2 Harper and James, Tort, § 29.13, at 1655 (1956)."

366 U.S. at 711, n.26, 81 S.Ct. at 1302, n.26.

There is nothing in the amended complaint or in the facts and circumstances here present which lead to the conclusion that the kind of misrepresentation, as was found in *Neustadt* and as is specifically excluded under § 2680(h) of the Federal Tort Claims Act, is the basis of plaintiff's claim. What plaintiff is complaining of is that FmHA negligently supervised construction and negligently inspected her house.

## VII.

The District Court erred in dismissing the amended complaint. It does not appear beyond doubt "that plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957). The judgment of the District Court is REVERSED and this cause REMANDED to the District Court for further proceedings consistent with this opinion.[7]

■

7. Subsequent to the decision in this case the Court of Appeals for the Tenth Circuit released its opinion in *Reynolds, et al. v. United States,* 643 F.2d 707 (1981), which appears to be contrary to our holding above. Careful review suggests that we take a different view of Congressional intent and the purposes of the statute with regard to technical assistance. Here, unlike *Reynolds,* the damages claimed were the direct consequences of the alleged negligent inspections, i. e., defects in the house. We are satisfied that plaintiff is entitled to go forward with her case.