**William L. KIRK, Individually and as Administrator of the Estate of Diane M. Kirk**

**v.**

**UNITED STATES of America.**

**Civ. No. 83–212–D.**

United States District Court,
D. New Hampshire.

March 15, 1985.

**1476**

James R. Volker, Salem, Mass., for plaintiff.

Bruce E. Kenna, U.S. Atty., Concord, N.H., for defendant.

## MEMORANDUM OPINION

DEVINE, Chief Judge.

Plaintiff William L. Kirk ("Kirk") has brought a claim in this court pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680. Plaintiff, owner of a house rife with problems, seeks money damages, premising his claim on the Farmers Home Administration's ("FmHA") negligent supervision and inspection during the construction of the imperfect home. Defendant argues in response that plaintiff's claim is barred by the applicable statute of limitations, that any negligence claim is without merit, and that its actions came within the ambit of a recognized exception to FTCA. As adduced from the evidence presented at trial, the relevant facts are as follows.

In April 1973 Charles Fitz ("Fitz") applied for a Rural Housing Loan from the FmHA pursuant to Title V of the Housing Act of 1949, 42 U.S.C. § 1471, *et seq.*, for the construction of a ranch-style home on a

one-acre undeveloped lot located at 49 Long Hill Road in Dover, New Hampshire. FmHA, which is an agency of defendant, accepted Fitz's application for a loan, and pursuant to regulations in effect at that time proceeded to assist Fitz in effectuating construction. These regulations, 7 C.F.R. § 1804, *et seq.* (1973), provided that the FmHA County Supervisor would approve the contractor selection and the construction contract, review plans and specifications for the building, approve any variances in construction plans, inspect the building construction, and determine if the construction complied with the conditions of the contract.

Fitz, with FmHA's approval, contracted with Albert Estes ("Estes") in April of 1973 to build a single-family home at 49 Long Hill Road. Estes met with FmHA's Construction Supervisor William West ("West") at that time to review and revise plans and specifications for the project. The design for the property's septic system was supplied by Fitz after approval of the system design by State authorities. The plans and specifications for the home as well as the construction contract between Fitz and Estes were approved in April 1973 by FmHA's Assistant County Supervisor Aaron Chadbourne. The construction contract granted FmHA the right to inspect and test all materials and workmanship as well as the right to reject any defective materials and workmanship.

Estes began construction at 49 Long Hill Road in June 1973 and completed work thereon in December 1973, the month Fitz took occupancy. West, in his capacity as FmHA's Construction Supervisor, visited the site on at least seven occasions between July 20, 1973, and August 28, 1974, to ensure compliance with design specifications. In January and June 1974 West observed foundation cracks, and FmHA directed Estes to repair these structural imperfections. During construction Fitz had ordered several unapproved variances, including relocation of the septic system from one end of the property to another. Pursuant to his obligation under the construction contract, Fitz had loam and sand brought to the site by dump truck in order to grade and backfill the site. West issued his final report in August 1974 indicating that construction was in conformity with FmHA's approved plans and specifications.

The FmHA file on the Fitz construction revealed that Fitz complained to FmHA in December 1974 about leakage and smell from the septic system. In February 1975 Estes agreed to open and repair the septic system. In February 1977 Fitz complained to FmHA about frost heaving and foundation cracking near the garage door and basement area. The foundation cracking was confirmed by FmHA officials in March 1977. The FmHA file does not reveal any further complaints. Fitz testified that Estes patched the foundation cracks and that he (Fitz) added six inches of fill to the leach field. Fitz did not experience any further problems with the foundation or the septic system during the years of his ownership. Neither did he experience problems with the electric circuitry or the water pump during his years of ownership. Fitz moved from the property in the summer of 1979.

Plaintiff became interested in purchasing the 49 Long Hill Road property in September 1979 after visiting the lot with realtor Larry Dubois. During that visit, plaintiff noticed that the foundation had been patched in several areas, a condition which the realtor attributed to settling. Plaintiff contacted FmHA at that time about obtaining mortgage financing for the 49 Long Hill Road property. In October 1979 plaintiff made an offer to buy the property for $40,500, an offer never submitted to Fitz by the Fischer Agency, the real estate firm selling the property for Fitz. FmHA approved plaintiff's application for a loan in October 1979. Plaintiff again offered to purchase the property for $41,000, the offer this time going to Walter Fischer of the Fischer Agency on October 26, 1979. Fischer purportedly had purchased the property from Fitz pursuant to a guaranteed sale contract, although the actual transfer of title between Fitz and Fischer was not accomplished until November 14,

1979. Plaintiff's second offer was never submitted to Fitz. Plaintiff offered to purchase the property for a second time from Fischer (a third time overall) on November 28, 1979, for $41,000, an offer which was accepted. Plaintiff and his wife occupied the premises in December 1979 under a rental agreement with Fischer until the transfer of title and closing on January 18, 1980.

Prior to closing, plaintiff made three separate personal inspections of the premises. In addition to the September 1979 inspection with Larry Dubois, plaintiff inspected the premises a few days later with his wife and Larry Dubois, and then in early October 1979 he inspected the premises with his wife and her parents. These inspections were cursory walk-through visits designed to ensure that basic utilities and amenities were present and functional. Plaintiff did not have a professional appraisal or inspection of the property to ensure the structural integrity of the home prior to purchase.

The first two purchase and sale agreements signed by plaintiff in October 1979 referenced the seller's obligation to update the plumbing, wiring, and heating system prior to the transfer of title. The third and last purchase and sale agreement was conditioned upon a functional septic system, with plaintiff accepting the responsibility of pumping out as well as inspecting the system prior to occupancy. While plaintiff did have the system pumped out, he did not endeavor to have it inspected. The last purchase and sale agreement also indicated that plaintiff accepted the house in its "as is" condition.

Plaintiff began to experience difficulties with the premises in June 1980 when he noticed that the ground around the leach field was wet and malodorous. In August 1980 the well pump failed. During the winter of 1980 and the spring of 1981 the foundation walls in the basement area developed serious cracks. Plaintiff hired Jack Wallace, a contractor, to repair the foundation walls in the fall of 1981. This remedial work revealed the cause of the cracked foundation: inadequate footings and frostwall in violation of FmHA's Minimum Property Standards ("MPS"), standards which had supposedly been achieved during the 1973 construction. Additional defects uncovered during the remedial work included inadequate insulation in the living room floor. According to Peter Rousseau, an excavation contractor, the septic system deficiencies were the result of inadequate depth of the system and a high water table.

Plaintiff first became aware of FmHA's involvement in the original construction of the 49 Long Hill Road property in October 1979, but did not gain access to the FmHA files, specifically the Fitz file, until the summer of 1981. Kirk submitted a Claim for Damage to FmHA on May 3, 1982, which was denied on October 26, 1982. The instant action was filed with the Court on April 22, 1983.

█ Before the Court can reach the merits of the case, it must initially determine whether plaintiff has brought suit in a timely manner. Under FTCA, 28 U.S.C. §§ 1346(b), 2671–2680, a tort claim against the United States must be presented in writing to the appropriate federal agency within two years of the time such claim accrues, and if it is not so presented, it shall be forever barred. 28 U.S.C. § 2401(b). In determining when a claim accrues, the Court follows "the lex loci rule—the applicable law is the law of the state where the claim arose." *Hau v. United States*, 575 F.2d 1000, 1002 (1st Cir.1978). Accordingly, the law of New Hampshire governs the issue of when plaintiff's cause of action accrued. *Girard v. United States*, 455 F.Supp. 502, 503 (D.N.H.1978).

█ It is well established in New Hampshire that a cause of action sounding in tort accrues at the time damages occur. *Premium Management, Inc. v. Walker*, 648 F.2d 778 (1st Cir.1981), *citing Roberts v. Richard & Sons, Inc.*, 113 N.H. 154, 156, 304 A.2d 364 (1973). There is, however, a "discovery rule" in New Hampshire which provides an exception to the general rule. *EIMCO–BSP Services Co. v. Davison Con-*

*struction Co.*, 547 F.Supp. 57, 59 (D.N.H. 1982). Under the discovery rule, a cause of action will not accrue "until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he was injured but also that his injury may have been caused by the defendant's wrongful conduct." *Id.*, *quoting Brown v. Mary Hitchcock Memorial Hospital*, 117 N.H. 739, 743, 378 A.2d 1138 (1977).

■ Application of the discovery rule to the facts presented in this case leads the Court to conclude that plaintiff presented his claim to FmHA within the requisite two years following the accrual of his cause of action. With respect to the defective septic system, plaintiff noticed effluent discharge and odor in proximity to the leach field for the first time in June 1980, five months after occupying the premises at 49 Long Hill Road. Similarly, plaintiff only noticed foundation and structural cracking in the winter of 1980, almost a year after occupying the premises. Further, the Court finds that the relationship between the deficient septic system, structural defects, and FmHA's inspection of the premises at the time of construction in 1973 only became apparent to plaintiff after he reviewed the FmHA file on the Fitz property in the summer of 1981. It is at that time, under New Hampshire's discovery rule, that plaintiff's cause of action accrued with respect to the septic system and structural imperfections. Since plaintiff presented his claim within one year following accrual, May 22, 1982, it is not time barred under 28 U.S.C. § 2401(b).

■ The Court finds that the nature of the defects and deficiencies associated with the property were such as not to be readily apparent to plaintiff during his views of the property in the fall of 1979. As latent defects, the Court is not convinced that even a professional appraisal would have uncovered the extent and severity of these defects in the fall of 1979. The FmHA appraisal performed at that time certainly did not uncover them. Moreover, neither of the two previous owners, Fitz or Fischer, informed plaintiff about potential problems with the property. In fact, the realtor showing the property to plaintiff attributed the patched cracks along the foundation observed by plaintiff in the fall of 1979 to simple settling of the foundation. Plaintiff did not have notice of the defects and their severity until discovered in June 1980 (septic system) and winter 1980 (foundation). Any inferences to be drawn from the three purchase and sale agreements signed by plaintiff cannot overcome this conclusion. However, even if plaintiff is presumed to have had notice of the defects prior to purchasing the property on January 18, 1980, the causal relationship between the defects and FmHA's conduct was not apparent until the summer of 1981. While it is true that plaintiff knew in October 1979 of FmHA's involvement in construction of the home at 49 Long Hill Road, he was not aware, nor in the exercise of reasonable diligence should he have been aware, of FmHA's alleged wrongful conduct until he had the opportunity to review the Fitz file in the summer of 1981. As noted above, it was at this time that the cause of action accrued, and plaintiff's claim was accordingly presented in a timely manner.

■ The Court next turns its attention to the merits [1] of plaintiff's allegation that FmHA negligently inspected and supervised construction of the 49 Long Hill Road property in 1973. In such a negligence action, plaintiff bears the burden of showing that defendant owed him a duty of care, that the duty was breached, and that the breach caused plaintiff's harm. *See* W. Prosser, Handbook of the Law of Torts § 30 (4th ed. 1971).

The existence of a duty on the part of FmHA to supervise and inspect the construction of homes built pursuant to the Housing Act of 1949 was examined in *Neal v. Bergland*, 646 F.2d 1178 (6th Cir.1981), *aff'd sub nom. Block v. Neal*, 460 U.S. 289,

---

1. The Court assumes, without deciding for purposes of this discussion, that FmHA's activities were not subject to the discretionary function exception, 28 U.S.C. § 2680(a), to the Government's waiver of sovereign immunity in FTCA, 28 U.S.C. § 2671, *et seq.*

291, 103 S.Ct. 1089, 1091, 75 L.Ed.2d 67 (1983). The Sixth Circuit Court of Appeals in that case evaluated the claim of a plaintiff who purchased a prefabricated house constructed under a contract requiring conformity with FmHA approved plans, where FmHA had given plaintiff a direct rural housing loan in 1977 and post-construction defects materialized. The Sixth Circuit found that the Secretary of Agriculture and FmHA were charged with certain statutory and regulatory responsibilities under the Housing Act of 1949. The Secretary was authorized to extend financial and technical assistance through FmHA to eligible rural residents to enable them to obtain "decent, safe and sanitary housing". 42 U.S.C. §§ 1471(a), 1472; *see* 7 C.F.R. § 1822.2 (1977). Buildings and repairs constructed with FmHA funds were to be supervised and inspected as required by the Secretary, who was authorized to provide technical services such as building plans, specifications, construction supervision, and inspection. 42 U.S.C. § 1476(a); *see* 7 C.F.R. § 1822.7(a) (1977). FmHA through its supervisors was to inspect development work as frequently as necessary to assure that construction was in conformity with plans and specifications, 7 C.F.R. § 1804.-4(g)(3) (1977), and borrowers were to be supervised to assure protection of FmHA's financial interest, 7 C.F.R. § 1802.74 (1977). After examining these provisions, the Sixth Circuit concluded that supervision and inspection of home construction served two purposes: the first, to achieve the objectives of the loan program by providing rural residents an opportunity for safe and decent housing, and the second, to protect the Government's security interest. *Neal v. Bergland, supra,* 646 F.2d at 1181.

With respect to FmHA's obligations, the Sixth Circuit held first that FmHA had no affirmative duty to inspect and supervise, *id.,* recognizing simply that FmHA had been granted a right to inspect, and that such a right, without more, did not imply an obligation to inspect, *id.* According to the Sixth Circuit, none of the statutory provisions or regulations "include[d] a clearly defined obligation on the part of FmHA running to plaintiff to perform any supervisory function", and thus no contractual obligation or duty existed on the part of FmHA to provide supervision or inspection during construction, *id., citing Ramsey v. Farmers Home Administration,* 443 F.Supp. 760 (E.D.Mo.1978); *Adamsville Lumber Co., Inc., v. Rainey,* 348 F.Supp. 373 (W.D.Tenn.1972); *Forcum-Lannom, Inc. v. Berry,* 344 F.Supp. 774 (W.D.Tenn.1972).

The Sixth Circuit in *Neal v. Bergland, supra,* did, however, conclude that FmHA had assumed a duty to inspect and supervise construction projects, and thus could be held liable for a breach of that duty in a tort action for negligent inspection. This conclusion was supported by the existence of regulations requiring inspection,[2] 7

---

2. The Court notes with considerable interest that the regulations found at 7 C.F.R. § 1804 were amended in 1980 to provide:

  (a) *Responsibility for Inspection.* The County Supervisor or District Director, accompanied by the borrower when practicable, will make final inspection of all development work and periodic inspections as appropriate to protect the security interest of the government.... The borrower will be responsible for making inspections necessary to protect the borrower's interest. FmHA's inspections are not to assure the borrower that the house is built in accordance with the plans and specifications. The inspections create or imply no duty or obligation to the particular borrower but are, rather, for the dual purposes of determining that FmHA has adequate security for its loan and enabling FmHA to

determine that FmHA is working toward achieving the statutory goal of providing adequate housing....

  (b) *Frequency of inspections....*

  ....

  (5) The borrower should make enough periodic visits to the site to be familiar with the progress and performance of the work, in order to protect the borrower's interest.

7 C.F.R. § 1924.9(a), (b)(5). In at least two instances since 1980 where plaintiffs sought to hold FmHA liable for negligent inspection and supervision of site development, federal courts have found that these amended regulations render the Good Samaritan doctrine nugatory since they unequivocally indicate that it is the borrower's responsibility to make site inspections in order to protect his or her interest. *See Moody v. United States,* 585 F.Supp. 286 (E.D.

C.F.R. § 1804.4(g), and by the Good Samaritan doctrine,[3] as embodied in *Restatement (Second) of Torts* § 323 (1965), which provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

*Id.* at 1181–82. *See, e.g., Park v. United States,* 517 F.Supp. 970 (D.Or.1981) (FmHA was negligent in undertaking to perform its duty to inspect during rural housing construction).

■ In the case at bar, plaintiff's predecessor in title, Fitz, the original owner of the property at 49 Long Hill Road, obtained a rural housing construction loan from FmHA in 1973. This loan was governed by statutory provisions and regulations almost identical[4] to those evaluated in *Neal v. Bergland, supra,* and the Court finds the Sixth Circuit analysis in that case persuasive. The Court accordingly concludes

that while no contractual obligation on the part of FmHA arose from the statutory and regulatory provisions existent in 1973, a duty to perform a non-negligent inspection did exist under New Hampshire's Good Samaritan doctrine.[5]

■ The Court has previously had occasion to reference this doctrine.

It is a basic principle of the applicable New Hampshire law that one who voluntarily undertakes to act may be liable to others for the negligent performance of the undertaking. *Corson v. Liberty Mutual Insurance Company,* 110 N.H. 210, 265 A.2d.315 (1970); *Smith v. American Employers' Insurance Company,* 102 N.H. 530, 163 A.2d 564 (1960) *("Smith"); Pittsfield Cottonwear Manufacturing Co. v. Pittsfield Shoe Co.,* 71 N.H. 522, 53 A. 807 (1902); Restatement §§ 323, 324 A. 'This liability extends to all who may fairly be said to come within the orbit of risk created by the actor's negligence." *Smith, supra* 102 N.H. at 533, 163 A.2d at 567.

*Wise v. Kentucky Fried Chicken Corp.,* 555 F.Supp. 991, 995–96 (D.N.H.1983). *See, e.g., Irving v. United States,* 532 F.Supp. 840, 845 (D.N.H.1982) (with respect to Occupational Safety and Health Act inspections, "New Hampshire law does im-

---

Tenn.1984); *Cash v. United States,* 571 F.Supp. 513 (N.D.Ga.1983).

**3.** This case was affirmed by the Supreme Court *sub nom., Block v. Neal,* 460 U.S. 289, 291, 103 S.Ct. 1089, 1091, 75 L.Ed.2d 67 (1983). The Government did not, however, seek review of the question whether the complaint stated a proper claim under the Good Samaritan doctrine, but instead argued solely that the claim was excluded by the FTCA's misrepresentation exception. The Supreme Court consequently did not review the Good Samaritan question. The Supreme Court held that, assuming a proper claim was asserted under that doctrine, such claim was not barred by the misrepresentation exception, finding that negligence was actionable since it was separate and independent of any misrepresentation that also may have been present.

**4.** 7 C.F.R. § 1822.2 (1973) provided that "[t]he basic objectives of the Farmers Home Administration (FHA) in making section 502 loans are to assist farm owners ... and other rural residents ... who are or will be owners of land in

rural areas to obtain decent, safe, and sanitary dwellings...." 7 C.F.R. § 1822.7(a) (1973) provided that "[s]upervision will be provided borrowers to the extent necessary to achieve the objective of the loan and to protect the interests of the Government." 7 C.F.R. § 1804.4(g)(3) (1973), provided that FmHA's supervisor "will inspect development work as frequently as necessary to assure that construction and land development conforms with the plans and specifications...." 7 C.F.R. § 1802.74 (1973) provided that borrowers would be supervised "to the extent necessary to assure ... protection of [FmHA's] financial interest."

**5.** It is well established that in FTCA cases federal courts apply "the law of the place where the act or omission occurred", and here that rule requires application of the law of New Hampshire. *See* 28 U.S.C. § 1346(b); *Zabala Clemente v. United States,* 567 F.2d 1140, 1143 (1st Cir.1977), *cert. denied,* 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1978).

pose the 'Good Samaritan duty' that one who gratuitously undertakes to assist in the safety of plant operations by making inspections is liable to an injured employee for making negligent inspections which are causal of the injury to said employee"). Referenced in the *Wise* decision, the Court turns to *Restatement (Second) of Torts* § 324A (1965)[6] for the embodiment of the Good Samaritan doctrine. This section of the *Restatement* provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Plaintiff's burden in the instant action accordingly was to demonstrate by a preponderance of the evidence the following five elements under section 324A:

(1) that FmHA as defendant's agent undertook, gratuitously or for consideration, to render services to Fitz in 1973;

(2) that the services so rendered were of a kind which FmHA should have recognized as necessary for the protection of plaintiff;

(3) that FmHA failed to exercise reasonable care in the performance of its undertaking;

(4) that the failure to exercise reasonable care resulted in harm to the plaintiff; and

(5) that FmHA's failure to exercise such care (a) increased the risk of such harm, or (b) the undertaking was to perform a duty

owed by Fitz to plaintiff, or (c) the harm was suffered because of the reliance of Fitz or plaintiff. *See Jeffries v. United States,* 477 F.2d 52, 56 (9th Cir.1973).

The first four elements under section 324A discussed above encompass the elements of duty, breach, and harm in the traditional negligence analysis. The fifth element, with its three provisional requirements, encompasses the final element in the traditional negligence analysis, proximate causation. *See Blessing v. United States,* 447 F.Supp. 1160, 1193 n. 51 (E.D. Pa.1978); *DeJesus v. Liberty Mutual Ins. Co.,* 423 Pa. 198, 223 A.2d 849 (1966). The Court concludes that while plaintiff has carried his burden with respect to the first four enumerated elements, he has not made the requisite showing with respect to the fifth element, and defendant cannot therefore be held liable in this case.

The Court finds and rules, with respect to the first element under section 324A, that FmHA did gratuitously undertake to provide inspection and supervisory services to Fitz in 1973. This conclusion, as noted previously, is supported by *Neal v. Bergland, supra,* 646 F.2d 1178. With respect to the second element under section 324A, the Court concludes that the supervisory services rendered to Fitz were necessary for the protection of plaintiff. If FmHA negligently supervised construction at 49 Long Hill Road, thereby permitting the continuance of latent defects, subsequent owners of the property would be foreseeably impacted when the defects later became apparent. This foreseeability rationale applies with equal force to a subsequent owner who takes title one week after completion of construction or seven years after completion of construction. Both must be considered within the "orbit of risk" created by a negligent inspection. FmHA accordingly should have recognized that its supervisory services rendered to

---

**6.** *Restatement (Second) of Torts* § 323 (1965), employed by the court in *Neal v. Bergland, supra,* 646 F.2d 1178, and *Restatement (Second) of Torts* § 324A (1965) "are often cited together as expressions of the same basic principle." *Can-*

*ipe v. National Loss Control Service Corp.,* 736 F.2d 1055, 1059 n. 5 (5th Cir.1984), *citing Blessing v. United States,* 447 F.Supp. 1160, 1187 & n. 39, 1193 (E.D.Pa.1978).

Fitz in 1973 were necessary for the protection of all subsequent owners from latent structural defects.

██ The Court further finds and rules with respect to the third element under section 324A, after evaluating the evidence presented at trial, that FmHA failed to exercise reasonable care in supervising and inspecting construction at 49 Long Hill Road. FmHA approved plans and specifications, as well as the construction contract for the property, which were sufficient to meet FmHA's Minimum Property Standards. The foundation specifications and MPS for construction at 49 Long Hill Road permitted a minimum depth of excavation below finished grade of three feet, which would accommodate footings and frostwall. Siting the footings and frostwall at that depth would avoid frost upheaval and foundation cracking. West, the FmHA inspection supervisor, gave his approval to the finished construction in August 1974—approval that signified compliance with the specifications and MPS. However, the cracked foundation and subsequent excavation of the property revealed deviations in the construction from the specifications and MPS. Specifically, there was no frostwall beneath the garage doors, and the footings were not sunk to an adequate depth below grade. These inadequacies, according to Jack Wallace, who rebuilt the foundation in 1981, and Aaron Chadbourne, the FmHA County Supervisor who viewed the foundation in 1981, were responsible for the cracked foundation. This Court concludes therefore that FmHA's inspections in 1973 were not carried out with reasonable care since they failed to reveal these deviations.

Similarly, the plans and specifications approved by FmHA in 1973 required six inches of insulation in the ceilings, with three to five inches of insulation in the walls and floors. During Wallace's reconstruction of the garage foundation, the living room floor was exposed, revealing little or no insulation. The Court attributes this deviation from specifications to careless construction, thereby indicating FmHA's failure to exercise reasonable care in supervision and inspection.

On the other hand, the Court is unwilling to find a failure to exercise reasonable care in supervision and inspection with respect to the 49 Long Hill Road septic system. This deficiency was the result of improperly placing the system on the lower portion of the property, contrary to the state-approved plan that sited the system at the upper portion of the property. This variance in placement worked out between Fitz and the contractor, Estes, was accomplished without FmHA approval. Moreover, the septic system design was approved by state authorities without FmHA involvement. Placement of the system at the lower portion of the property caused seepage problems since the system was sited at a depth inadequate to accommodate proper leaching, and the problem was exacerbated by a very high ground water level at that location on the property. Additionally, during the landscaping of the property in 1973, Fitz had several heavy vehicles, including a bulldozer, traversing the land. The Court finds that this vehicular activity caused some damage to the piping in the septic system. This damage to the piping, in conjunction with FmHA's lack of involvement in designing and locating the system, leads the Court to find that FmHA did not fail to exercise reasonable care in supervising the construction of the septic system.

██ The Court next finds and rules with respect to the fourth element under section 324A that FmHA's failure to exercise reasonable care did result in harm to plaintiff. The structural defects in the foundation and other deviations from the plans and specifications forced plaintiff to seek remedial construction work costing thousands of dollars.

██ The Court lastly finds and rules with respect to the fifth element under section 324A that plaintiff has not established any of the three provisional require-

ments, (a), (b), or (c), listed thereunder.[7] With respect to subsection (a), plaintiff has not proven by a preponderance of the evidence that FmHA increased the risk of harm to plaintiff. The risk of harm to plaintiff arose through the contractor's marginal and questionable workmanship, specifically as it related to the integrity of the foundation. Plaintiff did not present any evidence which would suggest that FmHA altered or recommended an alteration in the structural construction process which in any way increased the risk of harm. The risk of structural damage resulting from inadequate footings and lack of frostwall existed independently of any inspection, negligent inspection, or omission to inspect.

At best, defendant's alleged conduct merely 'permitted the continuation of an existing risk,' an inadequate basis upon which to impose liability under section 324A(a). *See Raymer v. United States*, 660 F.2d 1136, 1143 (6th Cir.1981), *cert. denied*, 456 U.S. 944, 102 S.Ct. 2009, 72 L.Ed.2d 466 (1982); *United Scottish Insurance Company v. United States*, 614 F.2d 188, 194 (9th Cir.1980); *Zabala Clemente v. United States*, 567 F.2d 1140, 1145 (1st Cir.1978); *Davis v. Liberty Mutual Insurance Company*, 525 F.2d 1204, 1207 (5th Cir.1976). Plaintiff's critical defect is his inability to identify 'since of commission rather than omission.... Moreover, the comment to section 324A(a) makes clear that "increased risk" means some physical change to the environment or some other material alteration of circumstances.' *Patentas v. United States*, 687 F.2d 707, 717 (3d Cir.1982).

*Ricci v. Quality Bakers of America Cooperative, Inc.*, 556 F.Supp. 716, 720 (D.Del. 1983) (no increased risk of harm to plaintiff injured by defective equipment after defendant's alleged negligent safety inspection). The Court concludes that FmHA did not materially alter the construction process at 49 Long Hill Road in 1973 so as to increase the risk of harm to plaintiff within the meaning of subsection (a).

Similarly, with respect to subsection (b), plaintiff did not present any evidence which would lead the Court to believe that FmHA undertook to perform a duty owed by Fitz to plaintiff. In fact, the Court is hard-pressed to conceive of any duty which Fitz owed plaintiff at the time of construction in 1973. With respect to subsection (c), plaintiff did not present any evidence which would lead the Court to believe that Fitz or plaintiff detrimentally relied on FmHA's inspection and supervision. Plaintiff testified without equivocation that he did not rely on FmHA's 1973 inspection at the time of purchase of the property. Moreover, plaintiff did not present any evidence that Fitz relied on the FmHA inspection. Fitz in his testimony never alluded to any reliance on FmHA's inspection and supervision.

In summary, the Court finds and rules that plaintiff brought his suit in a timely manner under FTCA, 28 U.S.C. §§ 1346(b), 2671–2680; that defendant's agent, FmHA, did assume a duty under New Hampshire's Good Samaritan doctrine to inspect and supervise construction at 49 Long Hill Road in 1973 with reasonable care; that FmHA did not exercise reasonable care in carrying out its duty; that proper inspection was necessary for the protection of plaintiff; that FmHA's lack of reasonable care resulted in harm to plaintiff; but that defendant is not liable because neither plaintiff nor his predecessor in title detrimentally relied on FmHA's inspection and because FmHA's actions did not increase the risk of harm to plaintiff.

The foregoing shall comprise the findings and rulings of the Court pursuant to Rule 52(a), Fed.R.Civ.P. Any requests for findings and rulings submitted by the parties which are not hereinabove inferentially

---

**7.** These three provisional requirements under the fifth element are drawn directly from the text of *Restatement (Second) of Torts* §§ 324A(a), (b), and (c).

granted are herewith denied. The Clerk is directed to enter judgment for the defendant.

SO ORDERED.