**CAROLINAS COTTON GROWERS ASSOCIATION, INC., Appellants,**

v.

**The UNITED STATES of America and John R. Block, Secretary of Agriculture, Appellees.**

**No. 85–1382.**

United States Court of Appeals, Fourth Circuit.

Argued Nov. 6, 1985.

Decided Feb. 27, 1986.

Cynthia Leigh Wittmer and William H. McCullough (Charles C. Meeker and Nancy

---

H. Hemphill, Sanford, McCullough & Beard, Raleigh, N.C., on brief), for appellants.

Barbara C. Biddle (Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., Samuel T. Currin, U.S. Atty., Raleigh, N.C., Robert S. Greenspan, Washington, D.C., H. Robert Showers, Jr., Raleigh, N.C., Betsy Ginsberg and Jo Brooks, U.S. Dept. of Justice, Washington, D.C., on brief), for appellees.

Before WIDENER and SNEEDEN, Circuit Judges, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.

MICHAEL, District Judge:

This case is before the court on appeal from the action of the court below in granting a Rule 12(b) motion to dismiss filed by the United States, defendant below. The issue presented may be stated in its simplest fashion as follows: Was the court below correct in finding that, under the facts presented by the pleadings in this case the cause of action presented was the tort of misrepresentation, thus falling within the exception under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.*, (hereinafter "FTCA"), for "misrepresentation"?

### I.

The facts of the case are relatively briefly stated. Carolinas Cotton Growers Association is a cooperative enterprise of growers of cotton in the Carolinas (hereinafter "the Association"). It is a voluntary organization, with the Association itself undertaking to pool and to sell the cotton grown by its various individual cotton grower members. Incident to this process, the Association enters into various contracts with the individual growers, agreeing to take the crop grown by that grower at the time of its harvest, and to pay the grower for the crop in accordance with grading which is done by agents of the United States Department of Agriculture. The Association is responsible for requesting the grading of the cotton, and the Department of Agriculture is obligated under the Cotton Statistics and Estimates Act, 7 U.S.C. § 473a, *et seq.* to grade the cotton, once such a request has been made.

Once the grading is completed, the price for the cotton is then determined in accordance with the prices established by the National Cotton Exchange for that particular grade of cotton. The Association then undertakes to sell the cotton to various users of raw cotton.

In this case, the processes outlined above were followed, with no problem, until the ultimate users of the cotton—the purchasers from the Association—determined that the cotton had been overgraded, and consequently these users were not willing to pay the higher price for the overgraded cotton. Thus, the Association was forced to accept a lower price for the cotton and, having previously paid the overgrade price for the cotton to the producers of the cotton, suffered a loss of some $3.2 million.

The complaint asserted a separate, independent tort on the part of the defendant in the negligent grading of the cotton, and undertook thus to escape the strictures of the FTCA which ban a suit based on "negligent misrepresentation". More simply stated, the complaint asserted two separate, independent torts, namely, the negligent determination of the proper grade of the cotton, and the tort of communication of a misrepresentation to the Association. The answer of the defendant asserted that the tort, if any, was that of negligent misrepresention to the Association, and that this tort was the basis for liability, if any, to the Association, and that that basis of liability was not within the scope of the grant of authority to sue the United States under the FTCA.

### II.

While there are not a great many cases in this field, several cases dealing with this problem deserve close scrutiny. The three

cases which bear particularly closely on the issue raised are *Block v. Neal,* 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983), *United States v. Neustadt,* 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961), and *Cross Bros. Meat Packers, Inc. v. United States,* 705 F.2d 682 (3rd Cir.1983).

In *Neustadt,* the Neustadts relied on a certificate of value prepared by the Federal Housing Administration (FHA) in the negotiation for and purchasing of their residence. The certificate of value was prepared by the FHA in accordance with 24 CFR §§ 200.145, 200.146, 200.148 (1959 ed.) —regulations enacted to implement the duty imposed on FHA by Section 203(a) of the National Housing Act of 1934, as amended, 12 U.S.C. § 1701, *et seq.* The purpose essentially was to assure that federal mortgage money would be protected, in the sense that the lender could lend no more than an agreed on percentage of the appraisal value as fixed by the FHA. There was no dispute that the Neustadts, in buying the home, relied on the appraisal communicated to them via the "statement of FHA appraisal".

After taking possession of the property, the Neustadts found that the house was of lesser value than that indicated in the FHA appraisal, because of a defective condition in the subsoil supporting the home, which defective condition apparently could have been discovered on a proper inspection.

The Neustadts brought suit against the government under the FTCA, alleging that they "would not have purchased the property for [the indicated sum] but for the carelessness and negligence of [FHA]", 366 U.S. at 700–71, 81 S.Ct. at 1297. The government resisted the Neustadt claim asserting that it was not within the scope of the FTCA because of the provision of 28 U.S.C. § 2680(h) of that Act, excluding recovery upon "[a]ny claim arising out of ... misrepresentation, deceit ..." The District Court found for the Neustadts and the judgment was affirmed by the Court of Appeals for the Fourth Circuit.

Under the facts presented, the Supreme Court held that the Neustadt claim was one "arising out of ... misrepresentation" within the meaning of § 2680(h) and therefore was not actionable against the government under the FTCA. Mr. Justice Whittaker recites a series of cases in which the holdings had been contrary to that of the court below in Neustadt and states:

> Throughout this line of decisions, the argument has been made by plaintiffs, and consistently rejected by the courts, until this case, that the bar of § 2680(h) does not apply when the gist of the claim lies in *negligence* underlying the inaccurate representation, *i.e.,* when the claim is phrased as one 'arising out of' negligence rather than 'misrepresentation'. But this argument, as was forcefully demonstrated by the Tenth Circuit in *Hall v. United States,* [274 F.2d 69 (10th Cir.1959)] is nothing more than an attempt to circumvent § 2680(h) by denying that it applies to negligent misrepresentation.

366 U.S. at 703, 81 S.Ct. at 1298.

Since § 226 of the National Housing Act required that the prospective purchaser of property be given a "written statement setting forth the amount of the [FHA] appraised value", the Fourth Circuit in *Neustadt* argued that there was a specific duty on the government to make a careful appraisal. Mr. Justice Whittaker disposed of that contention by stating

> The compulsory disclosure provision of § 226 is but one of numerous instances in which Congress has relegated to a governmental agency the duty either to disclose directly, or to require private persons to disclose, information for the assistance and guidance of other persons in the conduct of their economic and commercial affairs. In practically all such instances, it may be said that the Government owes a 'specific duty' to obtain and communicate information carefully, lest the intended recipient be misled to his financial harm. While we do not con-

done carelessness by government employees in gathering and promulgating such information, neither can we justifiably ignore the plain words Congress has used in limiting the scope of the Government's tort liability.

366 U.S. at 710–711, 81 S.Ct. at 1302.

The doctrine of the *Neustadt* case was followed consistently until the Supreme Court had occasion to pass on a somewhat similar situation in *Block v. Neal.* In that case, the facts disclosed that the claimant under the FTCA had entered into an agreement to have a residence constructed, with the agreement providing that, when constructed, the Farmers Home Administration (FmHA) would provide an appropriate loan to the claimant for payment for the house. In that contract, there was a requirement that the work of the builder conform to plans approved by FmHA, and granted to FmHA the right to inspect and to test all materials and workmanship and to reject any that were defective.

An FmHA official inspected the house twice during the course of its construction, and once following its completion. While there was a series of communications between the claimant and the FmHA personnel, it does not appear clearly from the opinion that the inspection report itself was ever communicated to the claimant. On moving into the home, some fourteen defects were found, and the builder refused to cure the defects in accordance with the warranty which it had given. Thereafter, the claimant requested payment from the FmHA for the correction of these defects and the FmHA declined to do so.

The Court of Appeals for the Sixth Circuit found that the claimant had established a claim for negligence under the principle that "one who undertakes to act, even though gratuitously, is required to act carefully and with the exercise of due care and will be liable for injuries proximately caused by failure to use such care." 460 U.S. at 293 (quoting *Neal v. Bergland*, 646 F.2d 1178, 1181–82 (6th Cir.1981). Further,

it found that the FTCA specificially authorized suit against the government for the negligence of a federal agency in performing a voluntary undertaking. *See* 28 U.S.C. § 2674.

The Supreme Court addressed only the narrow issue of whether the claim was barred by the misrepresentation exception to the FTCA and concluded that this situation was not controlled by *Neustadt* because:

[t]he gravamen of the action against the Government in *Neustadt* was that the plaintiff was misled by a 'Statement of FHA Appraisal' prepared by the government. Neustadt alleged no injury that he would have suffered independently of his reliance on the erroneous appraisal. Because the alleged conduct that was the basis of his negligence claim was in essence a negligent misrepresentation, Neustadt's action was barred under the 'misrepresentation' exception.

460 U.S. at 296–97, 103 S.Ct. at 1093.

The Court found that:

Section 2680(h) thus relieves the Government of tort liability for pecuniary injuries which are wholly attributable to reliance on the Government's negligent misstatements. ... But it does not bar negligence actions which focus not on the Government's failure to use due care in communicating information, but rather on the Government's breach of a different duty

460 U.S. at 297, 103 S.Ct. at 1093–94. The Court found that in *Neal*, the government's misstatements were not essential to the negligence claim since the FmHA's "duty to use due care to insure that the builder adhere to previously approved plans and cure all defects before completing construction is distinct from any duty to use due care in communicating information to [the Neals]." *Id.* The "partial overlap" between the factual and legal questions involved in the two tort actions (misrepresentation and negligence) was deemed not to preclude pursuit of the negligence claim as:

[n]either the language nor history of the Act suggests that when one aspect of the Government's conduct is not actionable under the 'misrepresentation' exception, a claimant is barred from pursuing a distinct claim arising out of other aspects of the Government's conduct.

460 U.S. at 298, 103 S.Ct. at 1094. The Court concluded that the negligence claim against the government did not "aris[e] out of ... misrepresentation" within the meaning of 28 U.S.C. § 2680(h).

*Cross Bros. Meat Packers, Inc. v. USA,* presents another approach to the problem exemplified in the case at hand. In *Cross Bros.,* the plaintiff asserted some $625,000 in damages suffered because of allegedly negligent meat grading by Department of Agriculture employees and allegedly negligent supervision of the persons doing the grading. The Court of Appeals for the Third Circuit stated that the Supreme Court's definition of the tort of misrepresentation set forth in *Neustadt* had been refined in *Block v. Neal.* The court's holding was that the complaint in *Cross Bros.* alleging negligent supervision and grading "bears a stronger resemblance to the nature of the tort in [*Neal* ] than that in *Neustadt.*" It goes on to find that "[t]he meat was irrevocably devalued when the grade was placed upon it; its value was not affected by Cross' reliance on government statements." 705 F.2d at 684.

From these three cases, the principles applicable to decision in the case at bar are to be drawn. In comparing the factual patterns, it is apparent that the case at bar is more closely aligned with the fact pattern in *Neustadt* than it is with the fact pattern in *Neal* or, arguably, in *Cross Bros.*

In this case, the government agents were called on to grade cotton with a price to be determined from that grading; in *Neustadt,* the government agents were called on to appraise certain real property, thereby fixing the value for that real property. The grade of the cotton was *communicat-*

*ed* to the Association, with the concomitant price ultimately to be fixed based on the grade; in *Neustadt,* the appraisal value was *communicated* to the prospective purchaser of the property. The Association relied on the grading information which it was supplied; in *Neustadt,* the purchaser of the real estate, together with the lender, relied on the appraised value of the property. In the case at bar, the Association suffered losses because of the misrepresentation of the grade of the cotton; in *Neustadt,* the purchaser of the home suffered a loss because of the misrepresentation of the value.

In *Neal,* there was an additional duty—separate from any communication of information—imposed on the agents of the government, in the requirement that the agents of the government inspect the construction as it progressed, so as to insure that the construction met with the standards and specifications of the FmHA. No such separate duty, whether voluntary or otherwise, is to be found in the facts of the case at bar. It seems inescapable that had no communication of grade been made by the government's agents to the Association, there would have been no basis for any claim. The nub of the claim of the Association is in the fact that the government misrepresented to it the grade of the cotton, just as in *Neustadt,* the nub of the claim was that the government's agents had communicated a misrepresentation of the value of the home to the prospective purchaser. We view the *Neal* case essentially as complementing the *Neustadt* case, in that the *Neal* case held that there was a separate and distinct tort involved, apart from the tort of misrepresentation.

The opinion in *Cross Bros.* is more difficult to reconcile with the discussion of *Neustadt* and *Neal.* However, the rationale of that opinion seems to turn on the portion of the opinion which indicates that "it's [the meat's] value was not affected by Cross' reliance on government statements." 705 F.2d at 684. Certainly, in the

case at bar, the loss to the Association was brought about by the reliance of the Association on government statements. In that sense, the opinion in *Cross Bros.* can be reconciled with the *Neustadt* and *Neal* analyses, but, to the extent that such reconciliation is not possible, this court still must follow the guidance of the Supreme Court in reaching its decision.

### III.

It is necessary to consider an additional point briefly. In the opinion of the court below, the matter is addressed as a "motion to dismiss". Technically, the motion filed by the government proceeded on the grounds set out in Rule 12(b)(1) and 12(b)(6). Rule 12(b)(1) is not mentioned in the opinion below, but there is reference to Rule 12(b)(6). However, in the opinion itself and in the Judgment Order, the motion is referred to as a "motion for summary judgment". This would appear simply to be a case of mislabeling, since the opinion itself deals only with the allegations in the complaint. Nothing of a factual nature is to be found in the opinion below which can be said to be outside the allegations of the complaint. That being the case, it is the conclusion of the court that the references to summary judgment are in fact simply mislabelings not affecting the validity of the finding of the court below.

For the reasons set forth, the judgment of the court below is

AFFIRMED.