**Brown v. Bancroft**

*William G. Baughman,* for plaintiffs.
*Daniel Carn,* for defendants Robert and Mary Bancroft.
*Rob A. Krug,* for defendants Reynold Development Corp., R. Todd Reynold and Scott Reynold.

HORN, *J.,* February 25, 1992—This matter is before the court on a motion for summary judgment filed by the defendants Bancroft. For the reasons stated in this opinion, defendants' motion is refused.

Plaintiffs' complaint was filed on May 22, 1990. Plaintiffs allege, and the Bancrofts admit that they en-

tered into a written contract with the plaintiffs for the purchase of a single-family residence to be constructed by the Bancrofts. The defendants Bancroft admit that they retained the defendant Reynold Development Corp. (RDC) as the general contractor to construct the single-family residence. After the deed was delivered and the plaintiffs paid the purchase price, several defects in the house were discovered. The complaint delineates the defects and the costs of rectifying the problems.

Plaintiffs' complaint includes seven counts. The first three counts are against the defendants Bancroft and RDC. Two of those counts allege breach of contract for failure to construct consistent with the model and for failure to construct in a good and workmanlike manner. The third count alleges violations of the Unfair Trade Practices and Consumer Protection Act (UTP), 73 P.S. §201-1, *et seq.*

The next three counts are alleged against R. Todd Reynold personally and are essentially the same as the first three counts. The seventh and final count is against Scott Reynold, alleging that he failed to construct the deck and roof in a good and workmanlike manner.

RDC, R. Todd Reynold and Scott Reynold filed an answer and new matter to plaintiffs' complaint on June 18, 1990. Plaintiffs eventually settled with Scott Reynold on the claim for deck and roof repairs. The claim was for $900 and the plaintiffs settled for $600.

On November 15, 1990, the defendants Bancroft filed an answer to the new matter of RDC, R. Todd Reynold and Scott Reynold and also a joinder complaint against RDC and R. Todd Reynold. RDC and R. Todd Reynold

then filed an answer to the joinder complaint on February 1991.

The above pleadings reveal the following positions. The defendants Bancroft assert that the construction of the plaintiffs' residence was a joint venture between the defendants Bancroft and R. Todd Reynold, individually. The net profits were to be split 65 percent in favor of the defendants Bancroft and 35 percent in favor of R. Todd Reynold.

The defendants Bancroft were to supply the land and R. Todd Reynold was to supply the construction as an independent contractor. R. Todd Reynold was not an employee of RDC but rather was a general contractor who used his majority owned and under-capitalized corporation, RDC, for his own benefit.

The defendants Bancroft aver in the joinder complaint that to the extent the construction work was done in an unworkmanlike manner or not in accordance with the model, RDC and R. Todd Reynold are: (1) jointly and severally liable to the plaintiffs; or (2) liable over to the defendants Bancroft; or (3) jointly and severally liable to plaintiffs with the defendants Bancroft.

RDC and R. Todd Reynold deny that there was a joint venture and deny that R. Todd Reynold acted in his individual capacity. In the answer and new matter to plaintiffs' complaint, it is averred that R. Todd Reynold was an employee and agent of RDC. In the answer to the joinder complaint, it is averred that R. Todd Reynold acted at all times in his capacity as president of RDC.

As to the nature of the relationship between the defendants Bancroft, RDC and R. Todd Reynold, RDC

and R. Todd Reynold aver that the defendants Bancroft owned the land on which construction was to take place. The defendants Bancroft acted as the general contractors and RDC acted as a subcontractor.

RDC was to perform construction work, supply subcontractors and manage construction for the defendants Bancroft. RDC and R. Todd Reynold admit that there was an agreement to split net profits, but state that it was to be 65 percent in favor of defendants Bancroft and 35 percent in favor of *RDC* not R. Todd Reynold individually.

In the answer and new matter to plaintiffs' complaint, it is averred that to the extent that plaintiffs are entitled to damages, the defendants Bancroft are either: (1) alone liable; or (2) liable over to RDC, R. Todd Reynold and Scott Reynold, or (3) liable for contribution or indemnity.

The matter was referred by the court to arbitration and the award of arbitrators were filed on September 18, 1991. Judgment was rendered in favor of the plaintiffs and against the defendants Bancroft and RDC in the amount of $15,507. The arbitrators concluded that RDC was liable over to the defendants Bancroft. It was determined that Scott Reynold and R. Todd Reynold were not individually liable to the plaintiffs. Finally, it was determined that the UTP was not applicable.

On October 2, 1991, an appeal from the award of arbitrators was filed by the defendants Bancroft. The matter was listed for trial by the plaintiffs on November 19, 1991. The defendants Bancroft then filed a motion for summary judgment on December 4, 1991.

A motion for summary judgment should be granted where the whole record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035(b). The function of the court is not to decide issues of fact but to discern if such issues exist. *Taylor v. Tukanowicz,* 290 Pa. Super. 581, 435 A.2d 181 (1981). The moving party has the burden of proving that no genuine issue of material fact exists, and all doubts are to be resolved against the granting of summary judgment, *Penn Center House v. Hoffman,* 520 Pa. 171, 553 A.2d 900 (1989).

The defendants Bancroft have two main arguments in support of their motion for summary judgment. We shall address each in turn.

First, the defendants Bancroft cite *Elderkin v. Gaster,* 447 Pa. 118, 288 A.2d 771 (1972), for the proposition that an implied warranty of good workmanship or construction and habitability runs *only* from a vendor-builder. In other words, they contend that the implied warranty does not run from the seller of a house who does not perform the construction. The defendants Bancroft then argue that RDC was hired as the general contractor to construct the plaintiffs' residence, and that the defendants Bancroft did not perform, direct or control any of the construction.

In response, the plaintiffs argue that the *Elderkin* decision does not absolve the defendants Bancroft of liability. Plaintiffs stress that the defendants Bancroft agreed to construct for the plaintiffs, for an agreed consideration, a home located on land owned by the defendants Bancroft.

Plaintiffs also argue that there is a material question of fact as to the description of the role of the defendants Bancroft. Plaintiffs note that there were statements of counsel and testimony by Mr. Bancroft under oath at the arbitration that the Bancrofts had formed a joint venture with R. Todd Reynold and RDC.

We conclude, pursuant to *Elderkin,* that implied warranties of workmanlike construction and habitability run from the seller of a new home, regardless of whether the seller performs the construction. We also conclude that the defendants Bancroft were joint ventures with RDC and R. Todd Reynold and thus the defendants Bancroft were builder-vendors within the meaning of *Elderkin.* There are material questions of fact as to whether the defendants Bancroft breached any of the implied warranties that run with the sale of a new home.

In *Elderkin,* the Supreme Court of Pennsylvania held that a *builder-vendor* impliedly warrants that the home he had built and is selling is constructed in a reasonably workmanlike manner and that it is fit for habitation. *Id.* at 128, 288 A.2d at 777. It is the sale of a *new* house which triggers these implied warranties. *Scott v. First Inv. Corp.,* 556 F. Supp. 782, 784 (1983).

Implied warranties are contractual in nature. Logically, a new home will usually be sold by a builder who has developed the property. From then on, the home will be sold by a seller who did not build the house. The fact pattern of the *Elderkin* case dealt with the usual situation, a builder-vendor who sells the new home.

However, it is the *sale* of the new house which triggers the implied warranties which benefit the buyer. Since

the defendants Bancroft admit that they entered into a contract to sell a newly constructed single-family residence to the plaintiffs, the defendants Bancroft are liable for any breaches of the implied warranties, despite the fact that they did not actually perform the construction.

Even if we were to conclude that the implied warranties do not run from a mere seller of a new home, we would still conclude that the warranties run from the defendants Bancroft. In paragraph two of their joinder complaint, the defendants Bancroft aver that the construction of plaintiffs' home was a joint venture between the defendants Bancroft and R. Todd Reynold.

If there was a joint venture, then we cannot distinguish the roles of seller and builder. By their own admission, we must consider the defendants Bancroft to be vendor-builders.

The defendants Bancroft have a second argument in support of the motion for summary judgment. The defendants Bancroft cite *Mamalis v. Atlas Van Lines,* 522 Pa. 214, 560 A.2d 1380 (1989), for the proposition that the release of an agent on a claim also releases the principal. The defendants Bancroft then argue as follows. The liability of the defendants Bancroft is predicated on vicarious liability. They are not joint tortfeasors because they did not participate in the actual construction of the plaintiffs' home. Therefore, the release of Scott Reynold on the $900 claim for repairs to the deck and roof also releases the defendants Bancroft from the $8,250 claim in all counts of plaintiffs' complaint.

In response, the plaintiffs argue that in *Mamalis,* identical contract claims were brought against the agent and the principal. In the present case, one of the many claims were settled with Scott Reynold. Nothing in the law, including *Mamalis,* prevents the plaintiffs from bringing their other claims against the other defendants.

We agree with the plaintiffs and conclude that the release of Scott Reynold on the claim for deck and roof repairs does not preclude plaintiffs from bringing claims for the other defects which are delineated in their complaint. Each defect represents a separate claim.

The *Mamalis* decision involves the release of a principal where the agent settled an identical claim. This is logical since the principal is not liable for its own actions but is rather vicariously liable for actions of its agent. To rule otherwise would allow for a double recovery.

In the present case, only one claim has been settled. There are other distinct defects for which the plaintiffs may be entitled to recovery. Allowing a recovery for those defects would not be a double recovery just because plaintiffs have settled with Scott Reynold with respect to one particular defect.

Because of the settlement, the roof and deck claim shall be severed from the remaining claim in the presentation of the plaintiffs' case.

## ORDER

And now, February 25, 1992, the motion for summary judgment filed by the defendants Bancroft is refused.